SIMS *et al. vs.* ALBEA, sheriff, *et al.*; DuBose *et al. vs.* BANK OF WASHINGTON *et al.*

1. Where a *fi. fa.* was levied on property which had been conveyed voluntarily by a husband to his wife, and on the trial of a claim interposed thereto, a compromise was effected, and a verdict rendered by agreement, finding some of the property subject and the balance not subject, and a fund was raised from that found subject, the moving *fi. fa.* had a lien thereon, and could take the same, unless other claimants of the fund could show an equal or superior lien upon it.

2. The holders of *fi. fas.* who took no part in the claim case or in the compromise effected therein, can obtain no benefit therefrom. If they had a lien already, it was not displaced; but if they had none before, a lien was not thereby created in their favor.

(*a.*) One who became a creditor of the husband after the actual record of a voluntary conveyance from him to his wife, and did not reduce his claim to judgment until several years thereafter, had no lien on the property or a fund arising therefrom.

3. A voluntary settlement on the wife by her husband, not recorded in three months, would be void as to a creditor who credited the husband before the actual recording of the settlement, provided that the credit was based on that property.

4. Where one creditor, in order to bring a fund into court, abandoned a claim which he had on other property, equity will not permit another creditor, who has a claim on the money and also on the property relinquished, to take the money, but will remand him to the property, it being accessible to him; especially so, where he stood by, and took no part in the fight which resulted in a compromise verdict under which the fund was brought into court.

(*a.*) This case differs from 8 *Ga.*, 194; 21 *Id.*, 207; 27 *Id.*, 47; 67 *Id.*, 146.

May 13, 1884.

Liens. Judgments. Debtor and Creditor. Husband and Wife. Before Judge POTTLE. Wilkes Superior Court. May Term, 1883.

Sims & Company, Franklin and the Bank of Washington, who were judgment creditors of B. J. Jordan, ruled the sheriff for a fund in his hands arising from the sale of certain property as belonging to Jordan. The sheriff answered that he had in hand $3,740.00 arising from a sale under three county court *fi. fas.* in favor of Sims & Company, and three superior court *fi. fas.* respectively in favor of DuBose, Fortson and M. A. Simpson, who also were claiming the fund. They were made parties respondent to the rule, as also were W. W. Simpson and R. A. Simpson.

The evidence showed, in brief, as follows: Sims & Company's judgments were obtained July 11, 1881; Franklin's, July 11, 1881; Bank of Washington's, November 21, 1881; and the *fi. fas.* issued under these judgments were all levied on the property sold, and those of Sims & Company participated in the sale. DuBose's judgment was obtained May 2, 1882; Fortson's, May 1, 1882; M. A.

Simpson's, May 2, 1882; W. W. Simpson's, November 21, 1881; R. A. Simpson's, November 21, 1881. All of these were levied on the property sold, and also on the other property included in the deed of gift mentioned below. The property was sold as Jordan's, and he had returned it for taxes since the date of the deed to his wife and children. Jordan made a deed of gift to his wife and children, covering the property sold and other property. This was dated August 19, 1877, and recorded August 19, 1878. The debt to Sims & Company was made in 1880 and 1881, principally in 1880, and Sims testified that he did not know of the deed of gift; the debt to the Bank of Washington was made February 2, 1878, before the deed was recorded; Fortson's debt was made prior to the execution of the deed; the debts to the Simpsons between its execution and record; and that to DuBose, March 4, 1880, after the record of the deed. The *fi. fas.* of contestants were levied on the property, and Mrs. Jordan and children interposed a claim. Contestants attacked the deed, on the grounds respectively that the claim of Fortson was older than the deed; that the deed was not recorded in three months, and that it was fraudulent and void as to creditors. A mistrial was had; and when the case again came on for a trial, a compromise was effected, by which an agreed verdict was rendered, finding the property sold subject and the other property not subject.

Before the sheriff's sale, DuBose, Fortson and M. A. Simpson filed a bill to enjoin the sheriff and Sims & Company from selling under the *fi. fas.* of the latter; but the injunction was refused, and the parties remanded to assert their rights and equities by rule to distribute the fund as under a bill in equity.

At the trial in May, 1883, it was admitted that Jordan was insolvent.

The jury found for the contestants. Movants moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law, evidence and the charge of the court.

(2.) Because the court charged as follows: "If the parties did not mean that the deed was void for fraud against creditors, and the property was not found subject for that reason, then Sims & Company's *fi. fa.* had no lien on it. It could have no lien on the property, unless it was found to be Jordan's, in avoidance of the deed for fraud."

(3.) Because the court charged as follows: "If you believe that the verdict taken, as it is admitted was (done) by consent, was the result of compromise by which Mrs. Jordan surrendered a portion of the property covered by the deed, and was not intended to mean that on the issue, the deed of 1877 was made to defraud creditors, then the plaintiffs had no lien on the property and no lien on the fund."

(4.) Because the court refused the following request: "If Sims & Company, Bank of Washington, Georgia, and A. Franklin have shown any of the badges of fraud in connection with this deed, then the presumption is the deed was void and fraudulent as to them, and the burden of proof is on Miss DuBose, Simpson and Fortson, the contestants, to show that the deed was not fraudulent and void as to Sims & Company, Bank of Washington, Georgia, and A. Franklin; and unless said DuBose, Simpson and Fortson have overcome this presumption, by showing that the deed was not fraudulent and void as to Sims & Company, Bank of Washington, Georgia, and A. Franklin, then said Sims & Company, Bank of Washington, Georgia, and A. Franklin, having the oldest judgments, are entitled to be paid first."

(5.) Because the court refused the following request: "If Sims & Company, the Bank of Washington, Georgia, and A. Franklin have shown any of the badges of fraud, such as indebtedness on the part of Jordan at the time of making deed, secrecy on his part, failure to record the deed in three months, it raises the presumption that the deed was fraudulent and void, and makes a *prima facie*

case in their favor, and unless DuBose, Simpson and Fort-son rebut this presumption by proof, then Sims & Company, Bank of Washington, Georgia, and A. Franklin are entitled to be paid first, having the oldest judgments, because no title ever passed out of Jordan if the deed was fraudulent and void."

(6.) Because the court refused the following request: "It is admitted that DuBose's debt is younger than the record of the deed, and that Sims & Company's and Franklin's are also younger; then they stand upon the same footing as to the deed; but Sims & Company's and Franklin's judgments being older than DuBose's, are entitled to be paid first out of the property sold."

The court refused the motion as to Sims & Company and Franklin, and granted it as to the bank. Sims & Company and Franklin excepted to the refusal, and DuBose *et al.* excepted to the grant of the new trial as to the bank.

SIMS & SHUBRICK; F. H. COLLEY, for Sims & Company, the Bank of Washington *et al.*

R. TOOMBS; HARDEMAN & IRVIN; W. H. TOOMBS, for Albea, sheriff, DuBose *et al.*

JACKSON, Chief Justice.

This case arose on the claim of two sets of creditors of Jordan, the defendant in execution, to a fund in court from the sale of certain property of said Jordan. The issue between them was submitted to a jury under the charge of the court. The jury found for the defendants to that issue, made on the answer of the sheriff, and the movants of the rule made a motion for a new trial. This motion was denied to all the movants except the Bank of Washington; the other movants excepted to that denial, and the defendants, in another bill of exceptions, except to the grant of the new trial to the bank. Both writs of error were argued together here, and will be disposed of in this opinion.

The fund in controversy arose out of a portion of the property of Jordan, which was found subject to defendants' executions under a consent verdict, in which certain other property of Jordan was found not subject.

The case which resulted in this compromise verdict was made by levy upon all of Jordan's property by defendants to this rule and the claim thereof by Mrs Jordan and family, under a voluntary conveyance to her, and the issue was fraud or no fraud in that conveyance. All the property was covered by this deed. On the first trial, there was no verdict, and the court ordered an entry of a mistrial. On the next trial, the case was compromised, and the compromise, by agreement, took the form of a consent verdict, by which the property represented by this fund was condemned as subject and the balance was found not subject. The movants here were not parties to the claim case, but levied before the sale. A bill was filed to enjoin them. The injunction was denied, but defendants to the rule now before us were relegated to the contest on this rule, and allowed to make the same points as in equity under the bill.

1. The defendants clearly have a lien upon the fund. The property which the fund represents was found subject to their executions, and thus their lien has been adjudicated and fixed. The issue of fraud or no fraud in the deed of settlement was not passed upon by the jury, but, by agreement between the parties to the claim case, the defendants to this rule, the plaintiffs in that claim case, were permitted by the verdict and judgment therein to fasten their lien on this fund, on condition that they would abandon it, or all claim to it, on the rest of the property. It is perfectly clear, therefore, that the defendants must take this money, unless the movants show a superior lien thereto, to be preferred, or an equal lien, to divide the fund.

2. Have those who are plaintiffs in error here any lien at all? They did not condemn the property which made the fund. They were not parties to the claim case. They

took no part in that fight, and can reap no benefit from its result, so far as to get a lien by it, which they did not have before. Of course, if they had one before, it was not diverted by the compromise verdict to which they were not parties or privies.

Had they any before? The deed of settlement was made on the 19th of August, 1877, and recorded on the 19th of August, 1878. The judgments of Sims & Co. were not rendered until July 11th, 1881, and those of the other movant-plaintiffs in error in the same month of the same year. So that they had no lien by judgment until that date, which was long after the deed of settlement had been made and recorded. Even their debts against Jordan were created after the actual record of this deed.

So that we cannot see upon what principle the plaintiffs in error in the case of M. M. Sims & Co. *et al. vs.* Albea, sheriff, *et al.* can claim any part of this fund, and the judgment denying them a new trial must be affirmed.

3. How is it with the Bank of Washington? The judgment of the bank was rendered in November, 1881. It had therefore no judgment lien. Did it have any other lien? It appears from the record that the bank's debt was made in February, 1878, before the record of the deed the following August of that year, and doubtless it was upon this fact that the court below granted the new trial to the bank. The deed, being a voluntary settlement on the wife by the husband, would be void as to creditor who credited the husband " before the actual recording of the same.' Code §1778. But that credit must be based on the property settled. 28 *Ga.*, 170 ; *Brown vs. West et al.*, 70 *Ga.*, 201. Whether this bank gave credit to Jordan on the property which produced this fund does not appear.

4. But outside of all these points, in our judgment, there is another which must control the fund and give it to the defendants to the rule against the bank and all the movants.

The cause is in equity. The movants have all the properly

embraced in this deed of settlement levied upon. If they have a valid claim upon the portion of the property represented by this fund, they have one equally good against the balance which the deed covers. If they have a claim against any of the property, it rests on fraud in the settlement, legal or actual fraud. They have two funds to go upon—this land condemned by defendants to this rule, and the portion not condemned. The defendants, in order to condemn this, were forced to relinquish their claim on the other. If they lose this, they lose all. If movants lose here, they are hurt only as to time, provided they can make such a case as will condemn any of the land—this money in court, or that in the hands of the beneficiaries. Will not equity make them go on the other accessible fund? The Code, section 1949, would seem to cover it. It is true that the funds must be equally accessible, and hence one creditor cannot force another on property out of the state. 39 *Ga.*, 320; 54 *Id.*, 573. But the doctrine is applicable here. The entire property is in the grasp of the movants. Their levy is on all of it. Some of it is in money, but neither the land nor money has been found subject to their claims, any more than the portion of the property not sold. They can as well litigate with their debtor and his family, the claimants, as with these defendants; and they can just as well succeed in one as in the other case. In either they must attack the deed and show the fraud. The one presents no greater barrier than the other.

It must be borne in mind that this verdict in the claim case has not settled the question of fraud in the deed. It must be also remembered that the movants were no parties to that compromise verdict. It was won by no money or skill of theirs, but by that of the defendants. So that here are two funds, one in money and the other in land. That in money one creditor has put in money, and subjected to his claim by a law-suit and a compromise verdict. To put in money the other fund, will only require, if his claim be well founded, the other creditor to undergo the same

fight which this creditor has succeeded in. Why should he not undergo an equal burden? Equality is equity. And it strikes us that, with the land levied on upon which movants can go and defendants cannot go on account of this very verdict and judgment, the fruits of which movants would wrest from defendants, it would be unequal and inequitable to allow them to succeed. During the fight in the claim case, why did they not share the dangers and hazards of the battlefield? They were not even staying by the stuff. Quietly and without moving a muscle to help in tent or field, they now rush to divide the spoil. Equity will tell them, "Yonder is more where this came from. You shall have it when you win it, whether it be by a square, open fight, or by generalship and skillful manœuvring." It is our opinion, therefore, that the judgment be affirmed in Sims *et al. vs.* Albea *et al.*, and reversed in DuBose *et al. vs.* The Bank of Washington; and it is ordered.

See cited for movants, Code, §3580; 52 *Ga.*, 356; 58 *Id.*, 343; 62 *Id.*, 296; 65 *Id.*, 417; 60 *Id.*, 364, 594; 58 *Id.*, 446; 54 *Id.*, 557, 612; 8 *Id.*, 194; 21 *Id.*, 207; 27 *Id.*, 47; 62 *Id.*, 146; 61 *Id.*, 222; 68 *Id.*, 563. Bump on Fraud Con., 321 276.

For defendants, 54 *Ga.*, 569; 63 *Id.*, 296; Code, §1778; 28 *Ga.*, 170; 41 *Id.*, 435; 53 *Id.*, 159; 20 *Id.*, 223–5; 66 *Id.*, 720; Code, §§2662.

It will be observed that this case differs widely from 8, 21, 27, and 62 *Ga.* *supra* cited by movants, in this important particular, on the doctrine of two funds, where one is in money in court, to-wit: that the very verdict and judgment which brought this money fund in court was obtained on conditon that the defendants to this rule would relinquish their claim on the rest of the land, and the verdict and judgment pursuant to the agreement found the rest not subject. So that the point we rule is, that where one creditor, in order to bring a fund into court, abandons a claim which he had on other property to do so, equity

will not let another, who has a claim on the money, and also on the property relinquished, take the money, but will remand him to the property, especially where he stood by and took no part in the fight which resulted in a successful compromise verdict.

Judgment affirmed as to DuBose *et al.*, and reversed in the case of the bank.