## 7680.   GEORGIA REALTY CO. *v.* BANK OF COVINGTON.

In the absence of an agreement or a special equity to the contrary, assignees holding separately several notes secured by a mortgage or otherwise are entitled to share pro rata, and without any preference, in the proceeds arising from the sale of the security, when insufficient to satisfy them all; and this is true although the notes matured on different dates and the assignments were made at different times.

Where several notes are secured by a mortgage or otherwise, and the holder of the security transfers one of the notes and retains the others, the transferee has a preference over the assignor if the security is insufficient to pay all the notes. The equity existing in favor of the assignee and against the assignor in such case is considered sufficient to create a preference in favor of the assignee.

DECIDED FEBRUARY 1, 1917.

Money rule; from city court of Atlanta—Judge Reid. June 1, 1916.

*Smith, Hammond & Smith,* for plaintiff in error.

*R. W. Milner, Dorsey, Shelton & Dorsey,* contra.

GEORGE, J. S. C. and T. M. Callaway held title to land. On July 2, 1912, they conveyed this land by deed to E. V. Carter, guardian, to secure a loan of $8,000. All legal title was thereby conveyed. On September 30, 1912, the Callaways made a deed conveying this land to the Southern Finance Corporation, now the Southern Trust Company, subject to the said loan, title being still in E. V. Carter, guardian, as security for the loan. On September 1, 1914, the Southern Trust Company executed its bond for title to the said land to J. T. Daves, subject to the said loan, title being still in E. V. Carter, guardian, as security for the loan. Daves assumed payment of the loan, made a cash payment upon the land, and executed four notes of $3,000 each, maturing September 1st, 1915, 1916, 1917, and 1918, respectively, for the balance of the purchase-money. On October 27, 1914, the Southern Trust Company sold the two notes maturing September 1, 1915 and 1916, to the Bank of Covington; the bank buying bona fide, for value, and before maturity. On December 16, 1914, the Southern Trust Company sold the two remaining purchase-money notes, maturing September 1, 1917 and 1918, to the Georgia Realty Company, which also bought bona fide, for value, before maturity. The Southern Trust Company made a deed to the Georgia Realty Company as additional security, conveying its equity in the said land and containing the following recital: "This deed is made to secure payment of two purchase-money notes for $3,000, each dated September 1, 1914, and maturing September 1, 1917, and September 1, 1918, respectively, and being Nos. 3 and 4, respectively, said notes having been given by said Joel T. Daves as part purchase-money for above-described property under bond for title above mentioned, notes 1 and 2 of the series having previously been sold

to the Bank of Covington. An escrow deed in compliance with the aforesaid bond has this day been executed and deposited with the notes this day sold to the grantee. Wherefore, upon payment of the notes this day sold to the grantee herein and the production of notes Nos. 1 and 2 (sold to the Bank of Covington as aforesaid) marked 'paid,' the escrow deed aforesaid shall be delivered to Joel T. Daves, or his assigns, whereupon this deed shall be void and of no further force or effect." On February 9, 1915, the deed from the Southern Trust Company to the Georgia Realty Company was duly recorded. In January, 1916, in the city court of Atlanta, judgment was rendered in the suit of the Bank of Covington against J. T. Daves (no other party defendant), for the amounts due on the two notes owned by it, and declaring a special lien on the land. In March, 1916, in the city court of Atlanta, judgment was rendered in the suit of E. V. Carter, guardian, against S. C. and T. M. Callaway, for $8,000 principal, etc., secured by the fee-simple title to the land, and superior to all claims. The sheriff of the city court of Atlanta, under the Carter fi. fa., sold the entire legal title to the land for $10,000. Out of this fund the Carter fi. fa. was satisfied in full, and the sheriff retained the sum of $356.29. The Georgia Realty Company filed a petition for a rule against the sheriff, in the city court of Atlanta, claiming half of the fund. The Bank of Covington intervened, claiming the entire fund. The judge of the city court, by agreement, considered the case on the facts herein stated, and awarded the whole sum in the hands of the sheriff to the Bank of Covington; and to this judgment the Georgia Realty Company excepted.

1. The intervenor (the defendant in error) insists that it had obtained priority by its judgment against Daves, with a special lien upon the land. We do not think so. Its judgment gives the bank no added security whatever. This judgment was not a judgment against the Callaways, the defendants in fi. fa. from the sale of whose property the funds in court for distribution was derived. Moreover, the judgment is in no way binding on the plaintiff in error, because the plaintiff in error was not a party to the suit in which the judgment was rendered. *Strickland* v. *Bank of Cartersville,* 141 *Ga.* 565 (81 S. E. 886) ; *Marshall* v. *Charland,* 109 *Ga.* 306 (34 S. E. 671) ; *Sims* v. *Albea,* 72 *Ga.* 751.

2. The recital in the deed from the Southern Trust Company

to the Georgia Realty Company does not, in itself, create any priority in favor of the intervenor against the Georgia Realty Company. Manifestly this deed was given as security. It discloses that an escrow deed was deposited with the Georgia Realty Company at the same time. While it may have been unnecessary, it was certainly proper to provide that the escrow deed should not be delivered until not only the two notes owned by the Georgia Realty Company were paid, but also until the notes assigned to the Bank of Covington were produced and marked satisfied. It very clearly appears that this recital contained in the deed from the Southern Trust Company to the Georgia Realty Company was to accomplish nothing more than what the Southern Trust Company had, by its assignment of the notes to the contesting parties in this case, already done.

3. The proceeding to distribute money in the hands of the sheriff by a rule against the sheriff is essentially an equitable proceeding. Resort to a court of equity need not be had. *Rucker* v. *Tabor,* 133 *Ga.* 720 (66 S. E. 917); *National Bank of Athens* v. *Exchange Bank of Athens,* 110 *Ga.* 692 (36 S. E. 265); *Berrie* v. *Smith,* 97 *Ga.* 782 (25 S. E. 757); *Field* v. *Armstrong,* 69 *Ga.* 170. The fact that the petition for the rule was filed in the city court of Atlanta does not alter the principle. *Wright* v. *Brown,* 7 *Ga. App.* 389 (66 S. E. 1034). The fact that the Georgia Realty Company had not sued and obtained judgment on its notes can not alter the principle. *Smith* v. *Bowne,* 60 *Ga.* 485.

4. Since the judge of the city court of Atlanta in this proceeding had the authority to determine the respective rights of the parties to the funds remaining in the hands of the sheriff after the payment of the Carter judgment, and since no priority in favor of either party against the other was created or obtained by the deed from the Southern Trust Company to the Georgia Realty Company or by the judgment of the Bank of Covington against Daves, the judgment awarding the fund to the bank can be sustained only upon the theory that, the security being insufficient to pay all the notes, the assignment to the bank of the notes first maturing being first made, the bank was entitled to priority over the subsequent assignee of the remaining purchase-money notes. This question is one of primary importance. Mortgages are daily executed and delivered, securing a series of notes. Lands

are daily conveyed as security for debt evidenced by more than one note, and sales of personal and real property are made in which title is reserved or a lien created as security for purchase-money, evidenced by many notes. These notes find their way into the channels of commerce. It is assumed, for the purposes of this case, that the priority of notes secured by the same mortgage, or the purchase-money notes given for land, title to which is retained by the vendor, may be made the subject of contract between the parties interested, and that a general rule fixing such priority, in a case where the security is insufficient to pay the whole debt, applies only in the absence of contract.

"There are three general rules, any one of which may govern the priority of notes secured by the same mortgage and in the possession of different holders: (1) The notes may have no priority, and share pro rata the insufficient proceeds of the mortgaged property. (2) The notes may have priority in the order in which they fall due, without regard to the date of assignment. (3) The notes may have priority in the order in which they have been assigned," without regard to the date of maturity. In 27 Cyc. 1304 (c) these rules are referred to: "The rule as laid down in many cases is that, in the absence of an agreement or special equities to the contrary, the assignees and holders of the several separate notes of debts secured by a mortgage are entitled to share pro rata and without any preferences in the proceeds of the mortgage, when insufficient to satisfy them all; and it makes no difference that some of the debts matured earlier than the others or that the assignments were made at different times. According to a few cases the rule is that the holders of the notes, in such a case, are to be paid in the order in which their assignments were made, unless the mortgage or deed of trust which is the common security expressly prescribes a different order; but if all are assigned concurrently, all will share pro rata. . . . And there are still other cases holding that the assignment of one of such notes is an equitable transfer of the mortgage pro tanto, and the proceeds of a foreclosure, if not sufficient to pay all the obligations, should be applied to the notes in the order of their maturity, the holder of the note first falling due being entitled to satisfaction in full and then the others in their order." The intimation here is that

the pro-rata rule is supported by the weight of authority. In 2 Jones on Mortgages (7th ed.),. § 822, this statement occurs: "When there is no implication of an intention to give priority to the note assigned, the indorsement and delivery of it carries with it a pro-rata portion of the security and nothing more. The generally received doctrine is that, in the absence of agreement or special equities to the contrary, the assignees of the separate notes or debts secured by a mortgage are entitled to share pro rata in the proceeds of the mortgage, without preference or regard to the order of assignment or maturity of the debts. Since the transfer of one of several notes secured by the same mortgage carries with it a proportionate share of the security, it has been held that the mortgagee thereafter holds the mortgage in trust for the assignee to the extent of his interest." In the editor's note to Lawson *v.* Warren, 42 L. R. A. (N. S.) 183 (94 Okla. 103, 124 Pac. 46, Ann. Cas. 1914C, 139), an Oklahoma case, these three general rules are discussed at length, and it is there concluded that the courts of final resort in a majority of the States adhere to the pro-rata rule, with varying qualifications. The decisions of New York, Massachusetts, Pennsylvania, California, Connecticut, Louisiana, Vermont, and a number of other States follow this rule. According to this note, the courts in Georgia hold to the pro-rata rule, but this statement is open to question. The earlier-maturity rule finds support in decisions of the following States: Florida, Illinois, Indiana, Iowa, Kansas, Missouri, Ohio, and Wisconsin,. and the reason of this rule is strongly stated in the case of Horn *v.* Bennett, 135 Ind. 158 (34 N. E. 321, 956, 24 L. R. A. 800), from the Supreme Court of Indiana, from which we quote: "When a series of notes falling due at various dates are secured by mortgage, . . in case of an assignment of the notes to various persons they will be treated as several mortgages, and the persons holding notes maturing first will have a prior lien to those holding notes maturing subsequently thereto." The rule there stated is that "The assignment of the note first maturing carries·with it a pro tanto interest in the mortgage security—pro tanto, and not pro rata." The prior-assignment rule is supported by decisions of the courts of Alabama, Virginia, and West Virginia, according to the editor's note to the Oklahoma case in the 42 L. R. A., supra.

Considering these general rules, it must be admitted that few courts have applied them rigidly. Generally they have been modified, abandoned, or reversed, where the intervening equities demanded it. For instance, under the pro-rata rule, if it were applied rigidly, the assignee of some of the series of notes secured by one mortgage would have no priority over the assignor or mortgagee; but many of the courts adhering to this rule have considered the intervening equity existing between the assignor and assignee, the indorsement by the assignor, or at least the sale of the note to the assignee, as sufficient to work an exception to the general rule. The application of the earlier-maturity rule, if adhered to without exception, would operate in some cases to give the assignor or mortgagee a priority over his assignee, while the prior-assignment rule would in every instance give the assignee priority over the mortgage, without the necessity of introducing an exception to the general rule. It is to be observed that the pro-rata rule is the only one capable of universal application. The earlier-maturity rule presupposes that the notes secured by one mortgage mature at different dates, and the prior-assignment rule presupposes different dates of assignment.

Let us examine the decisions of the Supreme Court of this State. It is taken as settled in *Wellborn* v. *Williams,* 9 *Ga.* 86 (52 Am. D. 427), that the assignment of a note secured by a mortgage carries with it the lien of the mortgage as an incident thereto. In *Roberts* v. *Mansfield,* 32 *Ga.* 228, this general principle is recognized, and it is there said: "Where one holds two notes secured by mortgage and transfers the one, retaining the other, the mortgage lien accompanies the transfer of the note as an incident, and it would seem that in case the security falls short of paying both notes, the holder of the transferred note has a preference over the mortgagee who retains the other." That decision and the decision in *Crowder* v. *Dunbar,* 74 *Ga.* 109, recognizing the same principle, are the basis for § 4276 of the Civil Code of 1910, which first appeared in the Code of 1895. This section declares: "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security. If more than one note is secured and the mortgagee transfers some and retains others, the holder of the transferred notes has a preference over the mortgagee if the

security is insufficient to pay all the notes." For later cases bearing upon the general doctrine incorporated in this code section, see: *Berrie* v. *Smith,* 97 *Ga.* 782 (35 S. E. 757); *Willingham* v. *Huguenin,* 129 *Ga.* 835 (2), 840 (60 S. E. 186); *Setze* v. *First National Bank of Pensacola,* 140 *Ga.* 603 (79 S. E. 540). From these decisions and others dealing with the same question, it is deducible that the assignment of a note secured by mortgage or otherwise conveys to the transferee the benefit of the security. This is the doctrine of the first sentence of § 4276, supra. This is the general doctrine. This statement of the doctrine does not suggest that the whole security accompanies the note as an incident thereto, if the mortgage secures more than one note. It is clear that, while the transfer of one of a series of notes secured by the same mortgage transfers the benefit of the security to the assignee, such transfer does not have the effect of diverting out of the mortgagee or assignor all interest in the security. The general rule is, that, while the transfer of one of several notes secured by the same mortgage conveys to the transferee the benefit of the security, it conveys to him only a pro-rata interest in the property covered by the mortgage. In the event the security is insufficient to pay all the notes, the equity existing between the mortgagee, who retains some of the notes, and his assignee of one or more of the notes, is considered sufficient to vary the general rule and to give the assignee preference over the mortgagee. In *Smith* v. *Bowne,* 60 *Ga.* 485, the Supreme Court held: "A mortgage upon land having been made to secure several negotiable notes, and the notes having been passed to several different holders, and one of the holders having obtained a general judgment, and another having foreclosed the mortgage in the name of the mortgagee for his use, a sale of the premises under the general judgment passed the title free from the mortgage lien, the attorney representing the judgment of foreclosure having placed the execution founded thereon in the hands of the officer of the law making the sale, and caused the title, unincumbered, to be sold, and there being no fraud in the sale, and the premises having brought full value, or an amount approximating thereto. *The notes not covered by either judgment* can not be enforced against the land, but are thrown, in equity, upon the fund produced by the sale, for their pro-rata share there-

of." In that case a bill in equity made substantially the case presented in the headnote quoted, and prayed that the lands be resold under the mortgage lien and the proceeds be appropriated to the satisfaction of the notes held by the complainants. The chancellor to whom the case was submitted decreed that the sale already made had "divested the lien of the mortgage as to all the notes, and that the purchasers acquired an unincumbered title; that the lien of the mortgage attached to the proceeds of the sale, and that complainants might have leave to enter a rule absolute to enable them to proceed against such proceeds." Bleckley, J., in his opinion sustaining the chancellor, does not set forth the facts of this case in detail, but on examination of the original record it appears that certain lands were mortgaged for the purpose of securing twelve promissory notes, half of which matured upon one date and half upon a later date. Six of the notes were for $366.66 each, and six were for $266.66 each. The complainants were the purchasers of seven of the notes; one Truluck was the purchaser of one of the notes, and one Varner was the purchaser of four of the notes. All of the assignees purchased in good faith and for value. Truluck obtained a common-law judgment on his note, and an execution, issued thereon, was levied upon the property covered by the mortgage. Before the date of sale Varner foreclosed the mortgage and placed the mortgage fi. fa. in the hands of the sheriff. The complainants were not parties to either of these proceedings. The mortgaged property brought at the sale by the sheriff $1,505. This amount was insufficient to pay all the notes. While that case differs upon its facts from the instant case, it is held that the complainants in that case were "thrown, in equity, upon the fund produced by the sale, for their pro-rata share thereof." According to the opinion of Judge Bleckley in the case last cited, it is apparent that the policy of the law is against repeated foreclosures of the same mortgage, and that, in harmony with this policy, provision is made for a single foreclosure where the debt secured thereby falls due in installments. See Civil Code (1910), §§ 3272, 3285.

It is urged by counsel for the defendant in error that the Southern Trust Company could transfer to the Georgia Realty Company only the rights it had at the time of the transfer, and that

when the trust company sold the two notes to the bank, and thereby transferred to it as a necessary incident the security of the mortgage, the rights of the parties became fixed and the priorities established, and nothing that the trust company could thereafter do could change those rights. If the mortgagee assigns one of the two notes secured by the mortgage, he does not thereby divest himself of all interest in the security, but retains his pro-rata interest therein, subject to this exception: If the security prove insufficient to satisfy both notes, by reason of the equities existing between the parties, the assignee has a preference over the mortgagee in the distribution of the proceeds arising from the sale of the security. He conveys only the pro-rata interest in the security to the assignee, and it is only in the event the security proves insufficient to pay the whole debt secured by the mortgage that the assignee is given a preference over the assignor, and that is by virtue of an exception to the general rule arising under the special equities in the case. When all of the notes secured by a mortgage are transferred, although upon different dates to different transferees, the whole interest in the security passes as an incident to the notes transferred, but there exists, in the absence of contract to the contrary or special reason, no equity giving the first assignee the preference over a subsequent assignee. The mortgagee must be considered as the trustee holding title to the mortgage for the benefit of his assignees, and if he assign all the notes secured by the mortgage, each assignee is entitled to prorate in a fund derived from a sale of the mortgaged property. This conclusion of the matter will prevent a multiplicity of suits, and will prevent the splitting of the mortgage or lien. The earlier-maturity rule and the prior-assignment rule both have the effect of dividing the lien or splitting the mortgage. This, as we understand it, is against the settled policy of the law of this State. The sounder view is to consider the mortgage as securing one debt, evidenced by any number of notes, and that the security is spread out over the whole debt, although evidenced by many notes. The earlier-maturity rule necessarily considers the mortgage as a separate mortgage for each note after the first, as has expressly been declared in the decisions of the Supreme Courts of both Indiana and Iowa, where this doctrine is clearly defined. The prior-assignment rule, in ef-

fect, does the same thing. Under this rule the date of the assignment, rather than the date of the maturity of the note, fixes the priority between contesting assignees. The logic of this rule is that the act of assignment divides the mortgage and converts the lien, in effect, into a first and second, or third, mortgage, according to the number of assignments.

It is urged that one who buys some of the notes secured by a mortgage, with knowledge that the mortgagee is then the owner of the remaining notes secured by the mortgage, should be entitled to a preference over a subsequent assignee of the remaining notes; that he is presumed to have given greater value for the notes. A sufficient reply to this contention is that the purchaser of one or more of a series of notes secured by mortgage or otherwise may always fully protect himself by a contract with the assignor, and if he fail to do so, and if there be no special equities in the case, the holder of each note secured by the mortgage or other form of lien is entitled to prorate with him in the distribution of the security, regardless of the date of the maturity of the notes or of the date of the assignment of the same. For the foregoing reason the judgment of the lower court is

*Reversed. Wade, C. J., and Luke, J., concur.*