**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2016**

# In the Court of Appeals of Georgia

A16A0313. COMMUNITY & SOUTHERN BANK et al. v. FIRST
    BANK OF DALTON et al.

MILLER, Presiding Judge.

Following the foreclosure sale of real property, First Bank of Dalton ("Dalton") and Community Bank of Pickens County ("Pickens Bank") filed a petition for a temporary restraining order, interlocutory injunction, and declaratory judgment, seeking to determine their rights to the proceeds of the sale under the terms of Participation Agreements that gave each of these entities a partial interest in loans secured by the property. Relevant to this appeal, the trial court granted partial summary judgment to Dalton and Pickens Bank, finding that Defendant Community & Southern Bank ("CSB") was not entitled to deduct expenses from the proceeds of

the sale before distribution and that Dalton and Pickens Bank were entitled to attorney's fees. CSB now appeals.

CSB raises two errors on appeal. First, CSB contends that the trial court improperly interpreted the terms of the Participation Agreements by concluding that CSB was not permitted to deduct expenses before distributing the proceeds of the sale. Second, it argues that the trial court erred by awarding attorney's fees to Dalton and Pickens Bank. For the reasons that follow, we vacate the trial court's order and remand the case.

> On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.

(Citation omitted.) *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200 (633 SE2d 555) (2006).

So viewed, the evidence shows that in 2004, Gilmer County Bank ("Gilmer Bank") entered into a series of loans with A.S. Dover Development, Inc. ("Dover"), which were secured by a security deed to land that Dover intended to develop into residential lots called Tranquility at Carters Lake. In loan number 74744 ("Loan

2

74744"), Gilmer Bank issued Dover a loan in the amount of $3,700,000. In loan number 74747 ("Loan 74747"), Gilmer Bank issued Dover a loan in the amount of $1,800,000. Both of these loans were secured by the same parcel of land.

Thereafter, Dalton and Pickens Bank entered into Participation Agreements ("the Agreements") with Gilmer Bank in which Dalton and Pickens Bank each obtained a 27.027 percent interest in Loan 74744. Gilmer Bank also entered into an Agreement with Jasper Banking Company ("Jasper") in which Jasper obtained a 45.946 percent interest in Loan 74744.[1] Both loans were renewed in 2006 and again in 2008. In 2006, Gilmer Bank entered into an identical Participation Agreement with Jasper for 100 percent of Loan 74747.[2] Gilmer Bank eventually failed, it went into receivership with the FDIC, and its assets were transferred to CSB. CSB remained responsible for servicing the loans and making distributions under the Agreements. In 2012, Jasper failed, and, following its receivership, its assets were transferred to Stearns Bank ("Stearns").

---

[1] The parties entered into the original Agreements in 2004, and these were renewed in 2006 and 2008. This appeal concerns the 2008 renewal. The relevant provisions of the Agreements are identical. In the interest of brevity, we discuss only the terms of the 2008 renewal.

[2] It is undisputed that Loan 74747 was not participated in prior to 2006.

Under the terms of the Agreements, which Gilmer Bank originally drafted, Dalton, Pickens Bank, and Jasper obtained a percentage of the interest in the loans. CSB was to receive payments under the loans and disburse the funds to interest-holders.

In 2013, Dover defaulted on the loans and CSB foreclosed on Tranquility at Carters Lake. In December 2014, CSB sold the property for $1,452,470.12. After the sale, CSB failed to tender payment as required under the contract, and, in fact, did not make any payments until it placed some of the funds in an escrow account with the trial court in March 2015.[3]

Generally, contract construction is a question of law that we review de novo. OCGA § 13-2-1; *Knott v. Knott*, 277 Ga. 380, 381 (2) (589 SE2d 99) (2003). "The cardinal rule of [contract] construction is to ascertain the intention of the parties." OCGA § 13-2-3. When the terms of a contract are clear and unambiguous, this Court looks only to the contract itself to determine the parties' intent, *Lloyd's Syndicate No.*

---

[3] Paragraph 12 of the contract required that the "Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser. . . . Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser . . . ."

4

*5820 v. AGCO Corp.*, 294 Ga. 805, 812 (2) (756 SE2d 520) (2014), and we give the contract terms an interpretation of ordinary significance, *Inland Atlantic Old Nat. Phase I, LLC v. 6425 Old Nat., LLC*, 329 Ga. App. 671, 677 (3) (766 SE2d 86) (2014).

If the contract is ambiguous, this Court must apply the rules of contract construction to resolve the ambiguity. Id. If the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Id.

Under OCGA § 13-2-2 (4), "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." This Court will "avoid any construction that renders portions of the contract language meaningless." *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000). Specific provisions in a contract prevail over any conflicting general language. Id.

1. CSB first argues that the trial court erred when it found that CSB could not deduct expenses under the Agreements following the Borrower's default in the underlying loans.[4] We agree.

At issue here is the interplay between the various provisions of the Agreements. With respect to the Purchasers' – here Dalton, Pickens Bank, and Jasper – right to payment, the Agreements provided in relevant part:

9. DEFINITIONS. . . .

> E. Payments. Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of rights pursuant to a lien . . . ; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

13. FAILURE TO REMIT PAYMENTS. If Seller fails to remit

amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement, then . . .

---

[4] Stearns filed a counterclaim against Dalton and Pickens Bank challenging disbursement of the proceeds, and a cross claim against CSB for breach of contract based on Stearns's attempt to remove CSB from administering the loans. Stearns is not a party to this appeal, and we therefore do not address these issues.

A. Purchaser's Duty. Purchaser will not be responsible for any

Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

In the event of a default under the loans, the Agreements provided:

> 19. DEFAULT AND LIQUIDATION OF LOAN. *Notwithstanding any payment terms to the contrary*, in the event of Default . . . all Payments collected and received by Seller will be applied ratably as follows: first, to Expenses; second, to the unpaid principal amount of the Loan in proportion to the respective unpaid investments of Seller and Purchaser in the Loan at the time of Default; and third, to the respective accrued interest and other charges of Seller and Purchaser. . . .

(Emphasis supplied.)

We must determine how the payment provision in ¶ 13 (A) ("Payment Provision"), which applies where CSB fails to remit funds received from the Borrower in a timely manner, and the default provision in ¶ 19 ("Default Provision"), which addresses instances of default, are to be interpreted. In analyzing these provisions, we consider the definition of "Payments" in ¶ 9 (E), and the responsibility for "Expenses" in ¶ 4 ("Expenses Provision").[5] Assuming, without deciding, that the

---

[5] Under the Expenses Provision, the "Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary

7

Payment Provision and Default Provision create an ambiguity, we turn to general rules of contract interpretation.

The specific language of the Default Provision takes precedence over the more general provisions in the Expenses Provision and Payment Provision. By its express language, the Default Provision applies "[n]otwithstanding any payments terms to the contrary." Additionally, the Default Provision is triggered when there has been a default of the underlying loan. Thus, although CSB cannot normally seek to deduct its expenses as set forth in the Expenses Provision, in the event of a default, the Default Provision goes into effect.

Moreover, we must give words in a contract their plain and ordinary meanings. *Record Town Inc. v. Sugarloaf Mills Ltd. Partnership of Ga.*, 301 Ga. App. 367, 370 (3) (687 SE2d 640) (2009); see also OCGA § 13-2-2 (2) ( "Words generally bear their usual and common signification . . . ."). The term "notwithstanding" means "without prevention or obstruction from" or "in spite of," and its use in this contract means that the terms of the Default Provision apply "without any obstruction" from the other

---

by Seller to collect, enforce, or protect the Loan . . . including, but not limited to, attorneys' fees, court costs and disbursements (Expenses)." The parties agreed that there were "No Shared Expenses. Seller will bear all Expenses."

payment provisions. *Shearin v. Wayne Davis & Co., P.C.*, 281 Ga. 385, 386 (637 SE2d 679) (2006) (citing Webster's Third New International Dictionary (1976), p. 1545). Accordingly, the Default Provision controls.

Dalton and Pickens Bank argue that the term "payment" used in the Default Provision does not refer to payments made to purchasers because it uses a lowercase "p." In contrast, "Payments" as defined in the Agreements uses a capital "P." We are not persuaded. The phrase "notwithstanding any payment terms to the contrary" in the Default Provision of the Agreements does not refer to terms in the Borrower's underlying loans, as Dalton and Pickens Bank suggest. To read the Agreement in this manner would force us to look outside the contract for its meaning. This we will not do. *Lloyd's Syndicate No. 5820*, supra, 294 Ga. at 812 (2). The term "Payments" is defined in the ¶ 9 (E) of the Agreements to include the amount obtained from a sale of the property. Moreover, reading the Agreements as Dalton and Pickens Bank urge us to do would render the Default Provision meaningless because it would ignore the plain language of "notwithstanding any payment terms to the contrary."

We are also not persuaded by Dalton's and Pickens Bank's argument that the term "Expenses" in the Default Provision is used only to address the order in which a borrower's post-default payments are applied to the outstanding debt. Under the

Default Provision, "all Payments collected and received by Seller" following a default will be applied first to expenses, and under the definition set forth in ¶ 9 (E), will include any amount obtained from a sale of the property.

Moreover, the Payments Provision, which places the responsibility for the payment of expenses on CSB as the Seller applies only when CSB has failed to "remit amounts received from Borrower." The amount at issue here is not an "amount received from Borrower."

Accordingly, given the rules of statutory construction, we conclude that the Default Provision controls and permits CSB to deduct expenses from the proceeds of the sale before it distributes any remaining amounts to the Purchaser. The trial court's order awarding partial summary judgment on this ground is vacated.[6] The case is remanded with instructions for the trial court to consider the amount of expenses CSB may deduct before distributing any amounts of the proceeds to the Purchaser.

---

[6] Dalton and Pickens Bank contend that the entire amount realized from the sale must be distributed. CSB asserts that once expenses are deducted, only $862,565.70 is subject to disbursement. Dalton and Pickens Bank argued that this amount was unsatisfactory to clear the entire debt. Additionally, Dalton and Pickens Bank argue on appeal that this Court should affirm because CSB failed to submit evidence to support its claim of expenses. They did not raise this argument before the trial court. Moreover, at this stage of the proceedings, discovery was incomplete, and the only issue before the trial court was interpretation of the contract terms. Thus, we will not affirm the trial court's order on this basis.

2. The contract further provided that, in the event of any lawsuit to enforce the terms of the Agreements, the prevailing party was entitled to attorney's fees and court costs.[7] The trial court awarded fees and costs to Dalton and Pickens Bank based on its conclusion that the contract terms prevented CSB from deducting its expenses from the sale proceeds. Having concluded that the trial court erred in its interpretation of the Agreements, Appellees Dalton and Pickens Bank are no longer prevailing parties with respect to these issues.[8] We therefore vacate the trial court's award of fees on this ground.

In summary, we vacate the trial court's order and remand with instructions for the trial court to consider the amount of expenses CSB may deduct before it distributes any remaining amounts to the Purchaser. We also vacate the trial court's award of attorney's fees because Dalton and Pickens Bank are no longer entitled to attorney's fees.

---

[7] The contract provided "If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action."

[8] We note that Dalton and Pickens Bank were prevailing parties on other issues raised in their motion for partial summary judgment. CSB does not challenge the trial court's rulings on those issues, and thus, they are not properly before us.

*Judgment vacated and case remanded with direction. McFadden and McMillian, JJ., concur.*