A02A0695. CORNELIUS et al. v. NUVELL FINANCIAL SERVICES CORPORATION et al.
(568 SE2d 82)

MILLER, Judge.

James and Brenda Cornelius, plaintiffs below and formerly husband and wife, appeal the trial court's order (1) granting summary judgment to Nuvell Financial Services Corporation, Georgia Recovery, Inc., and Associates Recovery, Inc., and (2) denying a motion for a default judgment against K&B Unlimited Services, Inc. They contend that the trial court erred in finding no genuine issue as to any material fact with respect to their claim that defendants committed tortious acts against plaintiffs by unsuccessfully seeking to repossess a certain vehicle. Discerning no error, we affirm.

In August 1996, Brenda and her son entered into a retail installment contract and security agreement with an automobile dealer providing for the sale of a new car in exchange for a trade-in, down payment, and 60 monthly payments. Nuvell serviced the contract. When the account became 62 days past due, Nuvell hired a company to repossess the vehicle. After that attempt at repossession was unsuccessful, Nuvell hired K&B to repossess the vehicle. K&B was likewise unsuccessful, leading to Nuvell's hiring Associates Recovery, which was also unsuccessful. The vehicle remains in James Cornelius's possession to this day.

During their attempts to repossess the vehicle, the recovery companies all unsuccessfully attempted to persuade the Cornelius family to disclose the whereabouts of the vehicle. Unhappy with these attempts, plaintiffs brought suit against Nuvell, Georgia Recovery (whose role in the attempted repossessions is unclear), Associates Recovery, and K&B, alleging breach of contract, false efforts to repossess, and harassing conduct by the defendants.

1. Appellants argue that the defendants breached the financing agreement and thereby also committed a "quasi tort." As we discern no facts supporting this claim, we disagree.

Plaintiffs submitted no evidence sufficient to create a jury issue on this first claim. See *Hansen v. Cooper*, 253 Ga. App. 533, 535 (559 SE2d 740) (2002). Nothing in Brenda's or James's affidavit testimony suggests a factual basis for a claim of either breach of contract or any "quasi tort." In Brenda's deposition, she simply states that the contract was breached in that the defendants allegedly knew that her husband James, not she, was responsible for making the payments and that they harassed her nevertheless. She apparently had the understanding with James and their son that James would make the payments, which understanding she claims to have passed on to the defendants.

Inasmuch as this understanding conflicts with the express terms of the contract (which obligate her to make the payments), no breach of contract or tort claim could arise therefrom. Indeed, the contract states that "[a]ny change in the terms of this contract must be in writing and signed by the Creditor. No oral changes are binding." Nor does she assert the creditor agreed to any changes.

The plaintiffs' evidence is insufficient to create a jury issue as to whether Nuvell — or any defendant — breached the contract or committed a "quasi tort" under the contract. Accordingly, we hold that the trial court did not err in granting summary judgment to defendants on this claim.

2. The complaint also alleged that defendants committed tortious acts against plaintiffs by (a) falsely seeking to repossess the vehicle, and (b) threatening plaintiffs with arrest despite the fact

that the vehicle was not in the possession of the particular party at the house at the time the threats were made.

(a) The false repossession claim rests on the defendants' trying to repossess property from Brenda that she "did not have." No cause of action exists under Georgia law for such efforts, particularly where Brenda was the obligor on the financing agreement.

(b) With respect to the other allegation, former OCGA § 11-9-503 (revised and renumbered, effective July 1, 2001, as OCGA § 11-9-609) provides that, unless otherwise agreed, a secured party may after default take possession of the collateral without judicial process if that can be done without breach of the peace. Here the contract expressly provided that upon default, the creditor could repossess the vehicle. Accordingly, the question becomes whether the plaintiffs produced evidence sufficient to create a jury issue on any breach of the peace by the defendants.

*Hopkins v. First Union Bank &c.*, 193 Ga. App. 109, 110 (1) (387 SE2d 144) (1989), defines "breach of the peace" in this context:

> A breach of the peace may consist of either actual physical force or constructive force, such as threats of violence or intimidation to compel the submission of a debtor against his will to the appropriation of what he construes to be his property. Thus, for example a threat of violence or an act likely to produce violence may constitute such a breach. Moreover, under our criminal law, abusive and insulting language ["fighting words"] constitutes a breach of the peace if there is an accompanying incitement to immediate violence. We further agree with most courts which find a breach of peace by any creditor who repossesses over the *unequivocal oral protest* of the defaulting debtor.

(Citations and punctuation omitted; emphasis in original.) See also *Deavers v. Standridge*, 144 Ga. App. 673, 675 (1) (242 SE2d 331) (1978).

Here Brenda testified that defendants (a) threatened her with "great trouble against me and my family, especially that they would obtain a *criminal warrant* and have me, James Cornelius, and other members of my family arrested and confined in a penal institution" and (b) verbally abused her by making frequent "rude" phone calls to her and demanding to know where the vehicle was located. (Emphasis in original.) She complained that at one point they briefly blocked her driveway to find the vehicle, but conceded that they moved at her request. James testified that he also received threatening telephone calls, including that the caller "was going to lock people up."

Since no violence or undue intimidation was threatened or com-

mitted, and no repossession even occurred, the foregoing evidence was insufficient to create a jury issue as to breach of the peace under the standards of *Hopkins* and *Deavers*. The trial court did not err in granting summary judgment on this claim.

3. Finally, James and Brenda contend that the trial court erred in denying their motion for a default judgment against K&B. James admitted at the hearing on the defendants' motions for summary judgment that he attempted service on K&B merely by serving the Secretary of State. This is improper without a showing of inability to serve one of the corporate representatives specified in OCGA § 9-11-4 (e) (1). Accordingly, we hold that the trial court did not err in denying the motion for a default judgment against K&B.

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 13, 2002 —
RECONSIDERATION DENIED JUNE 27, 2002.

Brenda F. Cornelius, *pro se.*
James Cornelius, *pro se.*
*McLanahan & Comolli, John M. Comolli, Kenney & Solomon, Thomas S. Kenney, Hicks, Casey & Barber, Ann V. Holmes, Richard C. Foster, Levine & Block, Stephen H. Block, Debra Warren, McCullough & Payne, John G. McCullough*, for appellees.