**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 17, 2014**

# In the Court of Appeals of Georgia

A14A0853; A14A1062. INLAND ATLANTIC OLD NATIONAL PHASE I, LLC et al. v. 6425 OLD NATIONAL, LLC.; and visa versa.

MILLER, Judge.

These consolidated appeals arise from a contractual dispute concerning the development of certain real property located in South Fulton County (hereinafter the "Property"). 6525 Old National, LLC ("Old National") sued Inland Atlantic Old National Phase I, LLC and Inland Georgia Old National Venture, LLC (collectively "Inland Atlantic") for breach of the parties' Site Development Agreement.[1] Inland Atlantic denied liability and counterclaimed for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, indemnification, and attorney fees, and

---

[1] Old National also raised claims for a special lien on the Property pursuant to OCGA § 44-14-361 in the amount of $125,000, promissory estoppel, attorney fees and interest. These claims are not at issue in these consolidated appeals.

also sought to quiet title on the Property.[2] Following discovery, both parties filed cross-motions for partial summary judgment. The trial court denied Inland Atlantic's motion. The trial court partially granted and partially denied Old National's motion.

The instant cross-appeals ensued. In Case No. A14A0853, Inland Atlantic contends that the trial court erred in granting Old National's motion for summary judgment on Inland Atlantic's counterclaims for breach of fiduciary duty, fraud, and negligent misrepresentation. In Case No. A14A1062, Old National contends that the trial court erred in denying its motion for summary judgment on Inland Atlantic's counterclaims for breach of contract and indemnification. Old National also contends that the trial court erred by failing to find that the Site Development Agreement was not terminated.

In Case No. A14A0853, we reverse the grant of summary judgment to Old National on Inland Atlantic's counterclaims for breach of fiduciary duty, fraud and negligent misrepresentation. In Case No. A14A1062, we affirm the denial of summary judgment to Old National on Inland Atlantic's remaining counterclaims.

---

[2] Inland Atlantic also filed a third-party complaint against Old National's Owner, Wayne Kendall, but subsequently dismissed those claims without prejudice.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnote omitted.) *GEICO Gen. Ins. Co. v. Wright*, 299 Ga. App. 280, 281 (682 SE2d 369) (2009).

So viewed, the evidence shows that, in June 2007, Old National and Inland Atlantic's predecessor in interest, as well as another entity, entered into a joint venture pursuant to a Limited Liability Company Agreement (hereinafter the "Joint Venture") providing for the development of a shopping center on the Property (hereinafter the "Project"). Inland Atlantic owned 50 percent of the Joint Venture; Old National's sole owner, Wayne Kendall, owned 25 percent; and another group owned the remaining 25 percent. The provisions of the Joint Venture Agreement gave Old National the right to either perform the site improvement work for the Project or negotiate a contract for that work.

The members of the Joint Venture spent the next three years lining up tenants for the Project. When enough tenants were lined up to develop half of the Project, the

3

members of the Joint Venture decided to develop the Property in two phases. Thereafter, on March 22, 2011, the parties entered into a membership purchase agreement whereby Inland Atlantic bought out Kendall's 25-percent interest in the Joint Venture (hereinafter the "Buyout Agreement"). On that same date, Old National and Inland Atlantic entered into a separate Site Development Agreement providing for development of the Project in Phase I and Phase II.

The Site Development Agreement was expressly conditioned upon consummation of the Buyout Agreement. Additionally, at Old National's insistence and in accordance with the provisions of the Joint Venture Agreement, the Buyout Agreement was conditioned upon the selection and hiring of Lewis Trucking and Grading Inc. ("Lewis") as the site-work contractor for Phase I.[3] Accordingly, Lewis was retained. Although Old National may have known that Lewis was having financial difficulties, Old National nevertheless represented that Lewis was financially qualified and would undoubtedly complete the site work as required.

The Site Development Agreement provided that Old National would supervise and manage the construction of site improvements in Phase I of the Project. Old

---

[3] Lewis began the grading and clearing work on Phase I in November 2010, almost four months prior to the parties' execution of the Site Development Agreement.

National's duties under the Site Development Agreement included reviewing and submitting a site plan and other documentation for governmental approval; coordinating the activities of architects, engineers and other consultants; coordinating permits and governmental approvals; and coordinating preparation of constructions plans and specifications. The Site Development Agreement provided for payment of a Phase I site development fee to Old National in the amount $175,000, which Inland Atlantic subsequently paid to Old National in full.

The Site Development Agreement contained an Ancillary Agreement providing that Inland Atlantic would retain Old National to oversee the site development of Phase II, so long as Old National was not in default of the Site Development Agreement. The Ancillary Agreement further provided that Old National would receive a Phase II development fee in the greater amount of $50,000 or five percent of the total cost of the Phase II site work.

The Site Development Agreement also contained a termination clause providing that either party could terminate the Site Development Agreement with 30 days written notice to the other party. The termination clause further provided that, upon termination, Old National would be entitled to compensation.

5

During the course of the work on Phase I, issues arose with regard to the quality of Lewis's site work, as well as Old National's failure to properly supervise that work. Specifically, Lewis failed to pay several of its subcontractors and failed to complete certain site work items required for Phase I, including the installation of a traffic signal and $32,000 in brick pavers. Lewis also substituted specified underground piping for less expensive pipes; failed to properly grade and backfill the site, resulting in the development of a sink hole near a retaining wall; and buried rock too close to the surface and existing ground pipes. The grading and backfill issues required a change in the plan design, costing Inland Atlantic a couple of thousand dollars.

Some of the site work performed in Phase I also involved work within Phase I and Phase II, including an asphalt road, sidewalks, utilities and sewer connections. Additionally Old National performed some work related to Phase II of the Project, including obtaining and submitting a bid from a contractor for Phase II, and meeting with the contractor and others about the site work. Nevertheless, following the completion of Phase I, Inland Atlantic chose not to retain Old National for the development of Phase II.

1. Inland Atlantic contends that the trial court erred in granting summary judgment to Old National on Inland Atlantic's counterclaim for breach of fiduciary duty with regard to the Joint Venture. We agree, because we find that a question of fact remains regarding whether Old National had a fiduciary obligation to Inland Atlantic under the Joint Venture Agreement.

"It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Punctuation and footnote omitted.) *Ansley Marine Constr. v. Swanberg*, 290 Ga. App. 388, 391 (1) (660 SE2d 6) (2008). A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." OCGA § 23-2-58.

Inland Atlantic argues that Old National had a fiduciary obligation to Inland Atlantic as a member of the Joint Venture, which was entered into pursuant to a limited liability agreement. Specifically, Inland Atlantic argues that Old National had responsibility for the Joint Venture's actions and decisions as the designated site-work partner.

The statutory duties owed by a member to a limited liability company are set forth in OCGA § 14-11-305. That statute pertinently provides that, in managing a limited liability company's business and affairs,

> [a] member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. A member or manager is not liable to the limited liability company, its members, or its managers for any action taken in managing the business or affairs of the limited liability company if he or she performs the duties of his or her office in compliance with this Code section.

OCGA § 14-11-305 (1). "If a member is not managing the affairs of the company, then no such duty attaches." *ULQ, LLC v. Meder*, 293 Ga. App. 179, 184 (7) (666 SE2d 713) (2008). Moreover, unless otherwise provided in the operating agreement or articles of organization, "where a member is not a manager in a company in which management is vested in one or more managers . . . that member shall have no duties to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member[.]" (Citations and punctuation omitted.) Id.

Here, the Joint Venture Agreement was actually a limited liability company agreement between Inland Atlantic, Old National and another entity. The Joint

8

Venture Agreement provided that the business and affairs of the Joint Venture shall be managed by Inland Atlantic.

Nevertheless, the Joint Venture Agreement also provided for delegation of specific management powers and duties to the members. The majority of these powers and duties were delegated to Inland Atlantic,[4] however, Old National was delegated as the responsible member for site development. Old National's responsibilities in that regard included participating in the bidding process for the site development portion of the Project, overseeing the clearing, grading and excavation of the site, overseeing the installation of utilities and traffic signs, and coordinating site infrastructure improvements. Old National was also responsible for supervising the site development contractor.[5]

Although Old National was not expressly defined as a manager under the Joint Venture Agreement, Old National had expressly delegated duties and responsibilities

---

[4] Inland Atlantic was delegated as the responsible member for entitlements, construction of the Project, leasing, property management, construction and land loans, and company administration.

[5] Pursuant to the Joint Venture Agreement, Old National reserved the right to perform the site development work on the Project. Ultimately, however, Old National was only retained to supervise the site development work, rather than performing the work itself.

9

under the Joint Venture Agreement. The existence of those duties raises a question of fact regarding whether Old National was managing some of the affairs of the Joint Venture and therefore owed a fiduciary obligation to Inland Atlantic under the Joint Venture Agreement. See OCGA § 14-11-305; *Meder*, supra, 293 Ga. App. at 184 (7) (when managing the affairs of a limited liability company a member must act in good faith and in the best interests of the company). Accordingly, we reverse the grant of summary judgment to Old National on Inland Atlantic's counterclaim for breach of fiduciary duty.

2. Inland Atlantic contends that the trial court erred in granting summary judgment to Old National on Inland Atlantic's counterclaims for fraud and negligent misrepresentation, because Old National misrepresented Lewis's capacity to complete the Phase I site work and withheld information regarding Lewis's financial condition. We agree, because Old National may have had a duty to disclose material facts on account of a fiduciary obligation to Inland Atlantic.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Punctuation and footnote omitted.) *Serchion v. Capstone Partners, Inc.*, 298 Ga. App. 73, 76-77 (2) (679 SE2d 40)

10

(2009); see also OCGA §§ 51-6-1; 51-6-2 (b)."[A]n action for fraud cannot be sustained when based upon alleged misrepresentations which are immaterial, not relied upon, or which the plaintiff in the exercise of reasonable diligence should have ascertained to be untrue." (Citation and punctuation omitted.) *Najem v. Classic Cadillac Atlanta, Corp.*, 241 Ga. App. 661, 664 (2) (527 SE2d 259) (2000).

Where a fiduciary relationship exists between the parties, that relationship "encompasses a duty to disclose so that suppression of a material fact which a party is under an obligation to communicate constitutes fraud." (Punctuation and footnote omitted.) *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 696 (577 SE2d 864) (2003). These same principles apply to Inland Atlantic's counterclaims for both fraud and negligent misrepresentation, which arise from the same alleged misrepresentations and omissions. See *Holmes v. Grubman*, 286 Ga. 636, 640 (1) (691 SE2d 196) (2010).

Here, when viewed in the light most favorable to Inland Atlantic as the nonmoving party, the evidence shows that Old National insisted upon the selection and hiring of Lewis as the site-work contractor for Phase I. The evidence also showed that Old National may have known that Lewis was having financial difficulties but

11

nonetheless represented that Lewis was financially qualified and would be able to complete the site work as required.

As set forth above in Division 1, a question of fact remains regarding whether Old National was managing some of the affairs of the Joint Venture and therefore owed a fiduciary obligation to Inland Atlantic under the Joint Venture Agreement. If a fiduciary duty exists between the parties, then Old National had a duty to disclose any material information it may have had with regard to Lewis's financial condition. See *Goldston*, supra, 259 Ga. App. at 696; see also *Bogle v. Bragg*, 248 Ga. App. 632, 636 (1) (548 SE2d 396) (2001) (suppression of material fact is fraud if there is a duty to disclose arising from a fiduciary relationship).[6] Since questions of fact remain, the grant of summary judgment to Old National on Inland Atlantic's counterclaims for fraud and negligent misrepresentation is premature and is reversed.

*Case No. A14A1062*

3. Old National contends that the trial court erred in denying its motion for summary judgment on Inland Atlantic's counterclaim for breach of contract. We disagree.

---

[6] Compare *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 646 (5) (b) (755 SE2d 675) (2014) (fraud claim failed in absence of fiduciary relationship or other particular circumstances that would give rise to a duty to disclose).

12

The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. A *breach occurs if a contracting party* repudiates or renounces liability under the contract; *fails to perform the engagement as specified in the contract*; or does some act that renders performance impossible.

(Citations and punctuation omitted; emphasis supplied.) *UWork.com, Inc. v. Paragon Technologies, Inc.*, 321 Ga. App. 584, 590 (1) (740 SE2d 8887) (2013).

"When a court construes contractual terms to determine if a breach has occurred, the cardinal rule of contract construction is to ascertain the intention of the parties." (Citation and punctuation omitted.) *UWork.com*, supra, 321 Ga. App. at 590 (1). Where the language of a contract is plain and unambiguous, no construction is required and this Court must give the terms of the contract an interpretation of ordinary significance. *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200-201 (1) (633 SE2d 555) (2006); see also *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 308-309 (3) (732SE2d 449) (2012) (the contract alone is looked to where the language is clear and unambiguous). If the contract is ambiguous, this Court must apply the rules of contract construction to resolve the ambiguity. *Old Republic Nat. Title Ins. Co. v. Harry J. Pannella, LLC*, 319 Ga. App. 274, 277 (1) (734 SE2d 523)

13

(2012). If the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Id.

The Site Development Agreement pertinently provides:

2. *Construction of Site Improvements*. . . . [Old National], as agent for [Inland Atlantic] *shall supervise and manage all work to be performed in the site development and construction of the site improvements* to the Property (the "Work"), including but not limited to, . . . assistance in negotiation of site development contract, erosion control, clearing, grading, installation of utilities. . . in accordance with the approved plan, specifications and permits[.]

6. *Default*. In the event either party should fail to perform hereunder for any reason, the non-defaulting party may proceed in law or in equity to enforce its rights hereunder. *No delay or omission in the exercise of any right or remedy accruing* to said party *upon any breach by the defaulting party* hereunder *shall impair such right or remedy or be construed as a waiver of any breach* theretofore or thereafter occurring.

(Emphasis supplied.)

Old National argues that Inland Atlantic waived any claim for breach of the Site Development Agreement because (1) Inland Atlantic never notified Old National

14

of any defaults or deficiencies in Old National's performance on Phase I other than the filing of liens by Lewis's subcontractors, and (2) Inland Atlantic made the final payment to Old National for its work on Phase I without advising Old National of its claim for breach of contract.

Contrary to Old National's argument, the unambiguous terms of the Site Development Agreement state that any delay or omission in asserting a claim for breach of contract *shall not* be construed as a waiver of any breach. Moreover, some evidence in the record shows that, prior to making the final payment on Phase I, Inland Atlantic did, in fact, notify Old National of deficiencies in Old National's performance of its duties under the Site Development Agreement. Specifically, Inland Atlantic sent Old National a list of work that Lewis failed to complete, and notified Old National that it was in breach of the Site Development Agreement for failing to file a Notice of Commencement and failing to adequately supervise or manage the work on Phase I. At a minimum, the evidence in the record is sufficient to raise a question of fact for a jury regarding whether Inland Atlantic waived its claim for breach of contract by making the final payment on Phase I of the Project without adequately notifying Old National of any deficiencies in the performance of its

15

duties.[7] See *Young v. Oak Leaf Builders, Inc.*, 277 Ga. App. 274, 277 (1) (626 SE2d 240) (2006) (where evidence is in conflict issue of waiver of breach of contract claim must be decided by jury).

The evidence is also sufficient to raise a jury question regarding whether Old National breached the Site Development Agreement by failing to properly supervise and manage the site work on Phase I. As set forth above, the Site Development Agreement required Old National to supervise and manage all of the site work, and some evidence shows that Old National failed to ensure that Lewis completed the site work in Phase I according to the required specifications. Accordingly, the trial court properly denied summary judgment to Old National on Inland Atlantic's breach of contract claim.

4. Old National contends that the trial court erred in denying its motion for summary judgment on Inland Atlantic's counterclaim for indemnification. We discern no error.

As set forth above, the first rule of contract construction is to ascertain the intention of the parties, and this Court looks to the language which the parties used

---

[7] Old National's alternative argument that Inland Atlantic is estopped from asserting any claim for breach of the Site Development Agreement fails for the same reason.

to discern that intention. *Service Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 292 (1) (617 SE2d 235) (2005). Additionally, where the contract provides for indemnification, that provision must be construed strictly against the indemnitee, and any ambiguity must be construed against the drafter. Id.

The indemnification provision in the Site Development Agreement pertinently provides:

> [Old National] and [Inland Atlantic Old National Phase I, LLC] agree to *indemnify, defend and hold each other harmless* from and against all claims, demands, fines, suits, actions, proceedings, orders, decree and judgments of any kind or nature, except resulting from willful misconduct or gross negligence on the part of either party, relating [to] or in connection with this Site Development Agreement and/or the development of the site improvements[.]

(Emphasis provided.) In construing that provision, the trial court properly found that an ambiguity remains even after application of the rules of contract construction, because the indemnitee could be either Inland Atlantic or Old National. Although issues of contract construction are usually questions of law for this Court to resolve, where an ambiguity in the contract remains after applying the rules of contract construction, the issue of what the ambiguous language means and what the parties

17

intended must be resolved by a jury.[8] *Board of Commrs. of Crisp County v. City Commrs. of the City of Cordele*, 315 Ga. App. 696, 699 (727 SE2d 524) (2012). Accordingly, the trial court properly denied Old National's motion for summary judgment on Inland Atlantic's counterclaim for indemnity.

5. Old National contends that the trial court erred in failing to specifically find that the Site Development Agreement was not terminated. We disagree.

As set forth above, the Site Development Agreement contained a termination provision providing that either party could terminate the agreement with 30 days written notice to the other party. Old National argues that Inland Atlantic did not provide 30 days written notice of termination and Inland Atlantic's communications of alleged deficiencies in Old National's performance under the Site Development Agreement cannot obviate compliance with the written notice requirement. Contrary to Old National's argument, Inland Atlantic was only required to substantially comply, not strictly comply, with the Site Development Agreement's termination clause. *Rome Healthcare LLC v. Peach Healthcare System*, 264 Ga. App. 265, 272 (5) (590 SE2d 235) (2003). Here, the evidence shows that Inland Atlantic repeatedly

---

[8] For the same reason, we reject Old National's argument that the indemnity provision in the Development Agreement is void as against public policy.

notified Old National of deficiencies in Old National's performance of its duties under the Site Development Agreement. Whether those communications rose to the level of substantial compliance with the Site Development Agreement's termination provision is a question of fact for the jury to decide. Accordingly, the trial court did not err in failing to find that the Site Development Agreement was not terminated.

In sum, we reverse the grant of summary judgment to Old National on Inland Atlantic's counterclaims for breach of fiduciary duty, fraud and negligent misrepresentation. We affirm the denial of summary judgment to Old National on Inland Atlantic's counterclaims for breach of contract and indemnity. Finally, we hold that a question of fact remains regarding whether the Site Development Agreement was terminated.

*Judgment reversed in Case No. A14A0853, and affirmed in Case No. A14A1062. Doyle, P. J., and Dillard, J., concur*.