**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 25, 2015**

# In the Court of Appeals of Georgia

A14A1772. CORDELL & CORDELL, P.C. v. GAO.

McFADDEN, Judge.

Shaojun Gao sued his former law firm, Cordell & Cordell, P.C. (hereinafter, the firm) for breach of contract, breach of fiduciary duty, unjust enrichment, and money had and received in connection with alleged overbilling. The case went to a jury, which found in favor of Gao and awarded him $23,213.70, the same amount that a panel of arbitrators previously had awarded Gao in nonbinding arbitration under the State Bar of Georgia's fee arbitration process.

The firm appeals from the judgment entered on that jury award. It argues that the trial court erred in admitting into evidence the arbitration award and portions of a recording of a telephone call between Gao and a former lawyer of the firm, and that the trial court should have granted its motion for directed verdict on all of Gao's

claims. The trial court, however, did not err in admitting the challenged evidence, the evidence supported the denial of the directed verdict motion on the breach of contract and breach of fiduciary duty claims, and the firm did not argue to the trial court the specific ground upon which it now claims entitlement to a directed verdict on the remaining claims. For these reasons, we affirm.

1. *Facts and procedural history.*

Gao hired the firm in September 2008 to represent him in an ongoing divorce action that involved complicated custody issues. The parties entered into a written contract setting forth the terms of the representation. Among other things, the contract provided that Gao would pay the firm specific hourly rates for its work on his case, that Gao acknowledged the total fees might be higher than any estimates given to him by the firm, and that Gao would like the firm to "assign attorneys and other staff to handle [the] matter in the most economical manner possible."

The firm worked on Gao's case for five and a half months and charged Gao nearly $50,000 for that work. The work included a mediation and three court appearances, at which some of the custody issues in the case were temporarily resolved to Gao's satisfaction. During this time, Gao told the firm he was concerned about the mounting fees. Nevertheless, he paid all of the bills he received from the

2

firm. In February 2009, Gao terminated the firm's representation of him because he could not afford further fees.

Soon after Gao ended the representation, the lawyer that had been assigned to his case left the firm. Shortly thereafter, that lawyer and Gao had a telephone conversation – a portion of which Gao recorded – that led Gao to believe the firm had overcharged him. Gao unsuccessfully sought a refund of some of the fees he had paid, then brought an arbitration proceeding against the firm under the State Bar of Georgia's fee arbitration program. The firm declined to participate in that proceeding. Gao, however, presented evidence to a panel of arbitrators at a hearing, and on January 29, 2010, the arbitrators issued an award in Gao's favor. The award stated:

> We find there was a written contract which provided for an hourly rate and a billing history. The evidence and testimony suggested that client billing emphasized the firm[']s financial needs rather than client[']s interest in this case. The evidence shows a total bill of $49,289.63 which was paid to [the firm] by [Gao] and we find from the evidence and testimony of [Gao] and subpoenaed witness that [Gao] receive a refund from [the firm] of $23,213.70.

The firm declined to be bound by the award and, accordingly, did not participate in the proceeding pursuant to the State Bar rules then in effect. See former State Bar R. 6-402.[1]

Gao then filed the instant action in superior court, and the action proceeded to a jury trial, at which the trial court admitted the arbitration award into evidence over the firm's objection. The trial court also permitted Gao to use portions of the recording of his telephone conversation with his former lawyer to impeach the lawyer twice during his testimony. At the close of Gao's case, the firm moved for a directed verdict on all counts, which the trial court denied. The jury ultimately returned a general verdict in Gao's favor for $23,213.70.

2. *Admissibility of State Bar arbitration award.*

The firm challenges the trial court's admission of the arbitration award into evidence. Over the firm's objection, the trial court admitted the award pursuant to the State Bar rules governing arbitration of fee disputes, which establish a program "designed to provide a convenient mechanism to resolve disputes between lawyers and clients over fees[.]" *Farley v. Bothwell*, 306 Ga. App. 801 (703 SE2d 397) (2010)

---

[1] The arbitration proceeding in this case took place under a former version of these rules, which were amended effective December 1, 2012. See State Bar Rules, Part VI, Arbitration of Fee Disputes, Preamble.

(citing former State Bar Rules, Part VI, Arbitration of Fee Disputes, Preamble). Those rules "are grounded in [the Georgia Supreme] Court's inherent and exclusive authority to govern the practice of law in Georgia." *Nodvin v. State Bar of Ga.*, 273 Ga. 559 (1) (544 SE2d 142) (2001) (citations omitted). Our Supreme Court has stressed that its "authority to regulate nearly every facet of the [legal] profession" permits "both regulation of the fee arbitration process and restriction on subsequent judicial review." Id. at 559 (1) (citations omitted).

Such restriction on subsequent judicial review includes the treatment of a fee arbitration award in a later civil proceeding concerning the fee dispute. See generally *Nodvin*, 273 Ga. at 561 (3) (describing State Bar rules' burden-shifting presumption, discussed below, as a limitation on attorney's right of judicial review of fee arbitration award). While a lawyer against whom an arbitration is brought may decline to be bound by the decision, see former State Bar R. 6-402, there are consequences to a refusal to be bound. The lawyer waives his right to participate in the arbitration hearing, although he may attend it. Former State Bar R. 6-402. Moreover,

> the rules contemplate that a nonbinding award may be evidence in
> subsequent civil litigation seeking a personal judgment against the

5

lawyer for the amount of the award[.] . . . In such subsequent litigation, the attorney fee dispute program gives the client the benefit of free legal representation and a rule establishing the award as prima facie evidence of its fairness.

*Farley*, 306 Ga. App. at 802 (citation and punctuation omitted); see former State Bar R. 6-502. To that end, former State Bar R. 6-502 (a) provides that "the award rendered will be considered as prima facie evidence of the fairness of the award and the burden of proof shall shift to the lawyer to prove otherwise."

Nevertheless, the firm challenges the trial court's admission of the award into evidence for two reasons: it argues that the arbitrators lacked authority to enter the award and it argues that the State Bar rules permitting the use of the award as prima facie evidence conflict with Georgia's evidence code. As detailed below, we find no ground for reversal.

(a) *Arbitrators' authority.*

The firm argues that the arbitrators had no authority to enter the award because it was contrary to the terms of the firm's contract with Gao. Under former State Bar R. 6-412, "[n]o arbitrator shall have authority to enter an award contrary to terms of an executed written contract between the parties except on the grounds of fraud, accident, mistake, or as being contrary to the laws of the state governing contracts."

6

The firm argues that the award in this case was contrary to the parties' contract because it refunded Gao a portion of fees for work that the firm performed and billed in accordance with the contract's terms. But the contract also included a term providing for the firm to "assign attorneys and other staff to handle [the] matter in the most economical manner possible." Further, the contract created an attorney-client relationship that imposed upon the firm a fiduciary duty of utmost good faith and loyalty to Gao. *Tante v. Herring*, 264 Ga. 694, 695-696 (2) (453 SE2d 686) (1994); see *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 595-596 (1) (562 SE2d 746) (2002); *Tunsil v. Jackson*, 248 Ga. App. 496, 499 (2) (546 SE2d 875) (2001). This duty required the firm "not to pursue any interest or take any act adverse to [Gao's] interests or incompatible with applying its best skill, zeal, and diligence in representing [Gao]." *David C. Joel*, 254 Ga. App. at 596 (1) (citations omitted). The arbitrators found, however, that the firm billed Gao's case in a manner that put its own interests ahead of Gao's interests. That finding and the arbitrators' refund of some of Gao's fees pursuant thereto were not inconsistent with the terms of the contract. Accordingly, former State Bar R. 6-412 did not prohibit the award and the trial court was under no obligation to exclude the award from evidence on that ground.

7

(b) *Alleged conflict with Georgia's evidence code.*

The firm also argues that the trial court should not have admitted the award into evidence because the State Bar rule permitting its admission, former State Bar R. 6-502 (a), conflicts with various provisions of Georgia's evidence code. In essence, the firm challenges the procedure established by the State Bar to facilitate the resolution of a fee dispute when the lawyer declines to be bound by arbitration, arguing that the State Bar rules cannot "trump the statutory laws regarding evidence as passed by the legislature[.]"

On its face, the firm's argument appears to conflict with the principles discussed by our Supreme Court in *Nodvin v. State Bar of Ga.*, supra, 273 Ga. 559. But we need not decide that issue because, as Gao points out, the firm did not make this particular argument to the trial court. "A reason urged that evidence should not have been admitted will not be considered on appeal unless the reason was urged below." *Argonaut Ins. Co. v. Head*, 149 Ga. App. 528, 531 (3) (254 SE2d 747) (1979) (citation omitted).

3. *Admissibility of recorded conversation between Gao and his former attorney.*

8

The firm argues that the trial court erred in denying its motion in limine to exclude the recorded conversation between Gao and his former attorney. In arguing that motion, however, the firm agreed that the recording could be allowed to impeach the lawyer, and the trial court limited the recording to that use. Consequently, the firm waived this claim of error. See *Perry v. Gilotra-Mallik*, 314 Ga. App. 764, 765 (1) (726 SE2d 81) (2012) (party cannot acquiesce in trial court's ruling below and then complain about that ruling on appeal).

4. *Directed verdict.*

The firm argues that the trial court erred in denying its motion for directed verdict on all of Gao's claims. "A motion for a directed verdict shall state the specific grounds therefor." OCGA § 9-11-50 (a). A directed verdict shall be granted "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict[.]" Id. On appeal from the denial of a motion for directed verdict, "we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict." *Parris Properties v. Nichols*, 305 Ga. App. 734, 735 (1) (700 SE2d 848) (2010) (citation omitted). Considering these principles, we find no ground for reversal. As detailed below, there

9

is evidence to support the jury's verdict on the claims for breach of contract and breach of fiduciary duty, and the firm did not state the specific grounds for directed verdict on the remaining claims that it now argues on appeal.

(a) *Claims for breach of contract and breach of fiduciary duty.*

The elements of a breach of contract claim are breach and resultant damages to a party with the right to complain about the breach. *Inland Atlantic Old Nat. Phase I v. 6425 Old Nat.*, 329 Ga. App. 671, 677 (3) (766 SE2d 86) (2014). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." Id. (citation and emphasis omitted). As discussed above, the contract in this case included a term providing for the firm to "assign attorneys and other staff to handle [the] matter in the most economical manner possible."

The elements of a claim for breach of fiduciary duty are the existence of a fiduciary duty, the breach of that duty, and damage proximately caused by that breach. *Inland Atlantic*, 329 Ga. App. at 674 (1). An attorney-client relationship imposes upon the attorney a fiduciary duty of utmost good faith and loyalty, which includes the responsibility not to pursue interests or take acts adverse to the client's

10

interest. See *Tante*, 264 Ga. at 695-696 (2); *David C. Joel*, 254 Ga. App. at 595-596 (1); *Tunsil*, 248 Ga. App. 499 (2).

There was some evidence presented at trial to support a finding that the firm performed work on Gao's case and billed for that work in a manner that placed the firm's financial interests above the interests of Gao, in violation of both the terms of the parties' contract and the firm's fiduciary duties as Gao's attorney. That evidence included expert opinion testimony that the firm overcharged Gao; in reaching this opinion, the expert witness questioned both the need for certain work that the firm performed on the case and the amount of time spent on other work. That evidence also included the testimony of Gao's former lawyer that the firm had instructed him to "think more creatively" about his cases to meet billable hour requirements, a practice that bothered the lawyer and that he thought did a disservice to the client. And that evidence included the arbitration award in which the arbitrators found that the firm had billed Gao in a manner that served the firm's interests over those of Gao. In light of that evidence, the trial court did not err in denying the motion for directed verdict on the breach of contract and breach of fiduciary duty claims. See *Parris Properties*, 305 Ga. App. at 735 (1).

(c) *Claims for unjust enrichment and money had and received.*

The firm argues that the existence of the contract precluded Gao's claims for unjust enrichment and money had and received, and consequently the firm was entitled to a directed verdict on those claims. See *Tuvim v. United Jewish Communities*, 285 Ga. 632, 635 (2) (680 SE2d 827) (2009) ("Unjust enrichment applies when as a matter of fact there is no legal contract[.]") (citation and punctuation omitted); *Fernandez v. WebSingularity*, 299 Ga. App. 11, 13-14 (2) (681 SE2d 717) (2009) (claim for money had and received "exists only where there is no actual legal contract governing the issue") (citation and punctuation omitted). The firm, however, did not make this argument to the trial court in support of its motion. The firm only argued generally that "[t]here's no evidence of any unjust enrichment" and that it did not "think that there's been proper evidence presented" to show money had and received. Because the firm's motion did not state the specific ground upon which the firm now argues the motion should have been granted as to the claims of unjust enrichment and money had and received, we will not consider that ground on appeal. *Phillips v. Blakenship*, 251 Ga. App. 235, 237 (3) (554 SE2d 231) (2001); see OCGA § 9-11-50 (a).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*

12