**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2018**

# In the Court of Appeals of Georgia

A18A0108. MILLER v. TATE et al.

MILLER, Presiding Judge.

After Charles Tate and Kevin Gleason entered into a purchase and sale agreement to purchase Kim Miller's house, the sale fell through, and Tate and Gleason (collectively "the buyers") filed suit against Miller for breach of contract. Following a trial, the jury found in favor of the buyers, and the trial court denied Miller's motion for judgment notwithstanding the verdict ("JNOV"). Thereafter, the trial court ordered specific performance of the contract to purchase the property. Miller now appeals. After a thorough review of the record, we conclude that the trial court erred in denying the motion for JNOV because the delay in closing the purchase was attributable to the buyers and, therefore, the buyers were in breach of the contract and were not entitled to specific performance. Accordingly, we reverse the trial

court's denial of Miller's motion for JNOV and remand the case for further proceedings.

> [O]n appeal from a trial court's rulings on motions for directed verdict and judgment notwithstanding the verdict, we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citations and punctuation omitted.) *Fertility Tech. Resources, Inc. v. Lifetek Medical, Inc.*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006); see also OCGA § 9-11-50 (a) ("If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.").

So viewed, the evidence shows that Tate and Gleason entered into a business together in which they would purchase properties to renovate and resell. In July 2013, Miller put his property in the Virginia-Highland part of Atlanta on the market.[1] On July 22, 2013, Tate and Miller entered into a purchase and sale

---

[1] At the time, Miller lived in California and had been renting out the house.

agreement ("the Agreement") in which Tate agreed to buy Miller's property for $487,400 cash, with closing scheduled for August 15, 2013. A few days later, the parties amended the Agreement to add Gleason's name as a buyer. Although Miller had accepted Tate's offer, he began regretting his decision to sell the property.

The Agreement provided for an extension of the closing date by either party unilaterally if "Buyer's mortgage lender, if any, (including in "all cash" transactions) or the closing attorney cannot fulfill their respective obligations by the date of the closing, *provided that the delay is not caused by the Buyer*." (the "unilateral extension clause") (Emphasis supplied.) The Agreement further provided, "[a]ll parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement."

Between the time the property went under contract and the date of the closing, the parties engaged in negotiations to (i) extend the closing date, (ii) remove certain contingencies from the Agreement, and (iii) remove Tate's name as a buyer in the Agreement. The parties, however, were unable to reach any consensus on these amendments, and none of the amendments were signed. Therefore, both Tate and Gleason continued to be named as the buyers on the Agreement.

Although Tate remained a party to the Agreement, and the Agreement specified that it was a cash sale, Gleason obtained a mortgage loan for the purchase. Gleason asked the bank's closing attorney if it was acceptable if only he, and not Tate, was listed on the deed. The bank's closing attorney advised Gleason that it was acceptable. Gleason testified that, had he be instructed that the deed required both names, he would not have asked the bank's closing attorney to prepare the deed with his name alone. It is undisputed, however, that the closing documents were prepared as Gleason directed and that he and Tate wanted the deed and loan to be in Gleason's name only for purposes of their business.

On August 13, 2013, the closing attorney emailed Miller copies of the closing documents, which he had previously requested. Those documents were solely in Gleason's name.

On August 15, Miller arrived at the closing and asked to see the deed. He then spoke briefly with his own attorney before advising the closing attorney that he would not sign the documents to complete the sale because the deed was only in Gleason's name. Although the closing attorney testified that she could have contacted Tate regarding the possibility of him signing the closing documents through a power of attorney, the bank would have had to approve this change, and there was no testimony

4

at trial that the documents could have been amended on the day of the closing. Ultimately, the deed was not amended by the end of the closing day, and Miller did not sign the documents.

The buyers sought to invoke the unilateral extension clause and reschedule the closing for August 22 in order to amend the deed and closing documents so that both Tate and Gleason were named. Although the lender and closing attorney had the corrected documents prior to the rescheduled closing date, Miller did not attend that closing.

Shortly thereafter, the buyers filed the instant suit claiming breach of contract. Miller counterclaimed for breach of contract. The jury found in the buyers' favor, and the trial court denied Miller's motion for JNOV. Miller now appeals.

1. Miller contends that there was insufficient evidence to support the jury's verdict because the closing was delayed due to Gleason's own conduct and thus Gleason was not permitted to invoke the unilateral extension clause.[2] We agree.

---

[2] Miller also contends that the trial court erred in denying his motions for summary judgment. Once the case proceeded to a verdict in a jury trial, however, Miller's summary judgment motions were moot. *AgSouth Farm Credit, ACA v. Gowen Timber Co., Inc.*, 336 Ga. App. 581, 586 (1) (784 SE2d 913) (2016).

The construction of a contract is a question of law that we review de novo. *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292 (609 SE2d 103) (2004).

> The elements of a breach of contract claim are breach and resultant damages to a party with the right to complain about the breach. A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible.

(Citations and punctuation omitted.) *Cordell & Cordell v. Gao*, 331 Ga. App. 522, 526 (4) (a) (771 SE2d 196) (2015).

> Each contract by which one employs another to sell real estate must be construed according to its particular stipulations. The first rule that courts must apply when construing contracts, including real estate contracts, is to look to the plain meaning of the words of the contract. The matter of contract construction is a question of law for the Court that is subject to de novo review.

(Citation omitted.) *Reynolds Properties, Inc. v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009).

Here, the Agreement clearly provided that the buyers would be both Tate and Gleason and that the purchase would be all in cash. Nonetheless, it is undisputed that only Gleason's name appeared on all of the closing documents and the deed. Thus,

6

the buyers failed to adhere to the terms of the Agreement, specifically, that both Tate and Gleason would purchase the property, and the closing could not proceed on the closing date under the Agreement's express terms.[3] See, e.g., *Sage Technology, Inc. v. NationsBank, N. A. South*, 235 Ga. App. 405, 408 (3) (509 SE2d 694) (1998) (purchaser breached the agreement by failing to deposit necessary funds prior to closing and seller was therefore authorized to terminate sale).

However, the contract contained an extension clause permitting the parties to unilaterally extend the closing date under certain circumstances. Thus, to determine whether the breach was attributable to the buyers or Miller depends on the construction of this clause.

The extension clause provided that the parties could extend closing if "Buyer's mortgage lender, if any, (including in "all cash" transactions) or the closing attorney cannot fulfill their respective obligations by the date of the closing, *provided that the delay is not caused by the Buyer*." (Emphasis supplied.) The evidence at trial showed

---

[3] There is conflicting evidence as to whether Miller knew of the deficiency in the closing documents and deed prior to closing. Even assuming that he was aware, his failure to sign the closing documents was not a breach. See *Dodson v. Kern*, 136 Ga. App. 522, 527 (221 SE2d 693) (1975) ("Mere silence will not work an estoppel. The 'standing by' must be under such circumstances as not only to afford an opportunity to speak, but also to create a real or apparent duty to speak.") (citation and punctuation omitted).

that Gleason requested the deed contain his name alone and that the exclusion of Tate's name was at Gleason's express direction. Because Gleason directed that the deed be drafted in a way that did not comply with the terms of the Agreement, he was the cause of the delay in closing, and the buyers were unable to invoke the unilateral extension clause. In other words, the evidence demanded a verdict in Miller's favor, and Miller was entitled to JNOV.[4]

Accordingly, we reverse the trial court's order denying Miller's motion for JNOV and remand the case for further proceedings on damages, if any, stemming from the breach and on Miller's claim for attorney fees under OCGA § 13-6-11.[5]

---

[4] We recognize that the bank's closing attorney informed Gleason that it was acceptable for his name alone to be on the deed. However, this does not provide a basis to conclude that the cause of the delay was attributable to anyone other than Gleason. Questions of whether the bank's closing attorney owed any duty to the buyers is separate from the question of breach of the contractual terms set out in the Agreement between the buyers and Miller. Cf. *Driebe v. Cox*, 203 Ga. App. 8, 10 (1) (416 SE2d 314) (1992) (seller had no claim against buyer's attorney for negligence in drafting deed because the seller knew the attorney represented the buyer).

[5] Miller's counterclaim for fraud in the inducement and punitive damages are precluded by the judgment in his favor on his breach of contract claim. See *Puckett v. John Bailey Pontiac-Buick-GMC Truck*, 311 Ga. App. 138, 140 (3) (714 SE2d 750) (2011) ("punitive damages may not be recovered for breach of contract"); *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 711-712 (2) (507 SE2d 493) (1998) (plaintiff cannot recover for both breach of contract and fraud in the inducement).

2. In light of our conclusion that Miller was entitled to JNOV, we need not address Miller's remaining enumerations of error.

*Judgment reversed. Andrews and Brown, JJ., concur*.