305 Ga. 414
FINAL COPY

S18G1033. HANHAM v. ACCESS MANAGEMENT GROUP L.P.

MELTON, Chief Justice.

This case stems from a dispute between James and Mary Hanham, homeowners within the St. Marlo subdivision, and Access Management Group L.P., the management agent for the St. Marlo Homeowner's Association. In 2011, the Hanhams filed claims for trespass, nuisance, negligence, invasion of privacy and breach of contract against their neighbor Marie Berthe-Narchet ("Narchet"), her landscaper GreenMaster Landscaping Service, Inc., and Access Management in response to a landscaping project on Narchet's property that resulted in flooding to the Hanhams' property and restricted their view of the golf course. During a 2016 jury trial, Access Management moved for a directed verdict on the negligence and breach of contract claims; the trial court denied both motions. The jury subsequently found in favor of the Hanhams, and Access Management appealed to the Court of Appeals, alleging, among other things, that the trial court erred in

denying its motion for a directed verdict as to the Hanhams' breach of contract claim. The Court of Appeals agreed and reversed the jury's judgment as to that claim. See Access Mgmt. Group, L.P. v. Hanham, 345 Ga. App. 130 (812 SE2d 509) (2018). Thereafter, we granted certiorari to decide whether the Court of Appeals erred in reversing the trial court's denial of Access Management's motion for a directed verdict as to the Hanhams' breach of contract claim. For the reasons stated below, we conclude that the Court of Appeals' decision was in error, and we, therefore, reverse the judgment below as it pertains to the breach of contract claim, vacate the final division of the Court of Appeals' opinion, and remand the case to the Court of Appeals for further consideration.

1. The record shows that the residents of the St. Marlo neighborhood in Forsyth County are governed by a Declaration of Covenants, which authorized the St. Marlo Homeowner's Association to delegate the management of its affairs to a third party. Based upon that authority, the association hired Access Management as the community management agent for the St. Marlo neighborhood.

The management agreement between Access Management and St. Marlo required that Access Management "[o]perate and maintain the

Development according to the highest standards achievable consistent with the overall plan of the association or as directed by the Board of Directors . . . ." Further, as recounted by the Court of Appeals, though the management agreement stated that Access Management's duties were limited to the neighborhood's common areas, evidence at trial established that Access Management, with the St. Marlo's knowledge, went outside these responsibilities by managing the homeowner application process for landscaping modifications submitted to the association's architectural control committee.[1] These expanded responsibilities included collecting project information, reviewing it for compliance with the association's architectural standards manual, and then forwarding the application to the architectural committee for review and approval. Access Mgmt. Group, 345 Ga. App. at 131-132.

Here, Narchet hired GreenMaster to build a retaining wall, plant trees, and assist with a drainage issue in her back yard. She submitted her application for architectural review to Access Management in July 2012, and,

---

[1] It is undisputed that the Hanhams are third-party beneficiaries of the contract between Access Management and St. Marlo. See OCGA § 9-2-20 (b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.").

despite the application's failure to comply with the association's architectural standards manual, the application was approved, and GreenMaster began the work on Narchet's property. Shortly after, the Hanhams complained to Access Management that the modifications had channeled a large amount of water onto their property and that the planted trees obstructed their view of the golf course. Eventually, the Hanhams filed suit, alleging that, as third-party beneficiaries, they were injured by Access Management's breach of its contractual duties under the management agreement. <u>Access Mgmt. Group</u>, 345 Ga. App. at 131-132.

At trial, Access Management moved for a directed verdict on all of the Hanhams' claims. Relevant to this case is the motion for directed verdict as to the breach of contract claim. The trial court denied the motion, finding as follows:

> There's — the claim of breach of contract, this is a claim — this is a third party beneficiary claim, the plaintiff's claim that they're third-party beneficiaries to Access Management Group's contract with St. Marlo in that the homeowners are to be protected by enforcement of the — of the standards. The same kind of analysis with the negligence is that, you know, it's up to the jury as to whether the standards were not complied with. And the jury can say by virtue of Access Management, you know, recommending that these — that this be approved. And approving this, that they are harmed in some way, again, a breach of contract claim. So the

— the — that is, motion for directed verdict is denied as to the breach of contract claim.

After the jury returned a verdict for the plaintiffs, Access Management appealed, arguing in pertinent part that the trial court erred in denying its motion for directed verdict as to the breach of contract claim. The Court of Appeals reversed the trial court's order denying the motion, finding that the Hanhams failed to present evidence that Access Management breached the terms of the management agreement. Specifically, the Court of Appeals held:

> A breach of contract, however, only occurs where "a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." Cordell & Cordell, P.C. v. Gao, 331 Ga. App. 522, 526 (4) (a) (771 SE2d 196) (2015) (Citation omitted). Here, it appears the parties mutually agreed by course of conduct to extend the responsibilities of Access Management beyond the scope of the terms provided in the management agreement. It is the deficient performance (or arguably, the nonperformance) of these noncontractual responsibilities that provides the only actionable basis for the Hanhams' claims against Access Management. *Neither this, nor any, breach of contract claim can be founded upon responsibilities not specified in the contract.* Thus, because the contract at issue fails to provide a basis for liability, the trial court should have granted Access Management's directed verdict on the breach of contract claim.

(Emphasis supplied.) Access Mgmt. Group, 345 Ga. App. at 132 (1) (a). We granted the petition for certiorari to review that holding and now reverse this portion of the decision of the Court of Appeals.

2. Generally speaking, "[t]he terms of a written contract may be modified or changed by a subsequent parol agreement between the parties, where such agreement is founded on sufficient consideration." (Citation and punctuation omitted.) Vasche v. Habersham Marina, 209 Ga. App. 263, 265 (2) (433 SE2d 671) (1993), citing American Century Mtg. Investors v. Bankamerica Realty Investors, 246 Ga. 39 (2) (268 SE2d 609) (1980). Such parol agreements between parties can be evidenced either through the parties' course of conduct, see Albany Fed. Sav. and Loan Assn. v. Henderson, 200 Ga. 79, 81 (7) (36 SE2d 330) (1945), or through oral modifications, see Reynolds v. CB&T, 342 Ga. App. 866, 868 (1) (805 SE2d 472) (2017) ("[o]ral modification of a written contract . . . may be effective 'where a modification of the written contract has been agreed to by all parties'" (citation omitted)). Applicable here is a course of conduct modification. And, contrary to the Court of Appeals' conclusion, parties may modify a contract through course of conduct, and such modifications are prohibited only where

the law or contract[2] specifically states otherwise. See <u>Simonton, Jones & Hatcher v. Liverpool, London & Globe Ins. Co.</u>, 51 Ga. 76, 80 (1) (1874) (noting that, at common law, "[a] written contract not required by law to be in writing might always be, subsequent to its making, altered or modified by a new parol contract based on a consideration").

Here, the Court of Appeals' analysis should have ended with the conclusion that Access Management and St. Marlo "mutually agreed by course of conduct" to modify the terms of the management agreement, and the modification was not prohibited by the law or the contract itself. Instead, the Court of Appeals erroneously relied upon its own case law concerning the elements of breach of contract — that "'[a] breach [of contract] occurs if a contracting party . . . fails to perform the engagement *as specified in the contract*'" — to effectively hold that no breach of contract could ever be

_____

[2]
Notably, the parties' subsequent course of conduct can also operate to waive an otherwise validly enforceable written requirement that all modifications be in writing. See <u>Gerdes v. Russell Rowe Communications, Inc.</u>, 232 Ga. App. 534, 536 (1) (502 SE2d 352) (1998). See also <u>American Car Rentals, Inc. v. Walden Leasing</u>, 220 Ga. App. 314, 316 (1) (469 SE2d 431) (1996), quoting <u>Caribbean Lumber Co. v. Anderson</u>, 205 Ga. App. 415, 417 n. 1 (422 SE2d 267) (1992) ("Waiver of a written modification requirement in a contract may be established through the course of conduct between the parties."). However, no such written provision was included in the management agreement at issue in this case. See also <u>Biltmore Constr. Co. v. Tri-State Elec. Contractors</u>, 137 Ga. App. 504, 506 (1) (224 SE2d 487) (1976).

founded where the responsibilities were not specified in the *written* contract, notwithstanding course of conduct modifications of that contract. (Emphasis supplied.) Cordell & Cordell, P.C., 331 Ga. App. at 526 (4) (a), quoting Inland Atlantic Old Nat. Phase I v. 6425 Old Nat., 329 Ga. App. 671, 677 (3) (766 SE2d 86) (2014). In other words, the Court of Appeals read its own case law to effectively prohibit course of conduct modifications. However, such a prohibition is only applicable in specific situations, such as those involving a written contract between private parties and the State, which is subject to the constitutional provisions of sovereign immunity.[3] See Ga. Dept. of Labor v. RTT Assocs., 299 Ga. 78, 82 (786 SE2d 840) (2016); Cornelius v. Nuvell Fin. Svcs. Corp., 256 Ga. App. 171, 172 (1) (568 SE2d 82) (2002). Here, the Court of Appeals added "as specified in the contract," which is an extra element not required by Georgia law for parties other than the State. Cooley

---

[3]

The "as specified in the contract" analysis language first appeared in UWork.com, Inc. v. Paragon Techs., 321 Ga. App. 584 (1) (740 SE2d 887) (2013). However, the case relied upon by the UWork.com court involved a modification in a suit involving a written contract between a private party and the State, which is subject to the constitutional provisions of sovereign immunity — one of the limited situations where the law specifies that the parties' intent alone cannot modify a contract. Bd. of Regents of the Univ. System of Ga. v. Doe, 278 Ga. App. 878, 887 (3) (630 SE2d 85) (2006); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (b).

v. Moss, 123 Ga. 707 (1) (51 SE 625) (1905) ("[a] breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible") (Citation omitted). Based on the foregoing, the Court of Appeals' legal analysis was in error and, as such, must be reversed. Moreover, to the extent that this analysis has been employed by the Court of Appeals to support the conclusion that private parties may never modify a written contract through their course of conduct, we disapprove. See, e.g., Miller v. Tate, 346 Ga. App. 315, 317 (1) (814 SE2d 430) (2018); Walker v. Oglethorpe Power Corp., 341 Ga. App. 647, 665 (802 SE2d 643) (2017); Seki v. Groupon, Inc., 333 Ga. App. 319, 322 (1) (775 SE2d 776) (2015); Cordell & Cordell P.C., supra, 331 Ga. App. at 526 (4) (a); Inland Atlantic Old Nat. Phase I, supra, 329 Ga. App. at 677.

3. Applying this well-established law, we now review the trial court's denial of Access Management's motion for a directed verdict on the Hanhams' breach of contract claim. "The denial of a directed verdict will be upheld on appeal if, construing the evidence in the light most favorable to the verdict, there is any evidence to support the verdict." Robinson v. Williams, 280 Ga. 877, 878 (635 SE2d 120) (2006). In its opinion, the Court of Appeals

determined that "the parties mutually agreed by course of conduct to extend the responsibilities of Access Management beyond the scope of the terms provided in the management agreement." Access Mgmt. Group, supra, 345 Ga. App. at 132. While our review of the record shows that testimony and exhibits presented at trial purporting to show the parties' modification of the contract is not overwhelming, there was evidence presented to support the jury's verdict in favor of the Hanhams' breach of contract claim regarding modifications to their duties under the management agreement, and we thus reverse the Court of Appeals' holding.

4. In the proceedings below, Access Management argued that the verdict form and final judgment were erroneous because they permitted a double recovery of damages for breach of contract and negligence. The Court of Appeals did not address this enumeration, finding the issue to be moot after it reversed the trial court's denial of Access Management's request for a directed verdict on the breach of contract claim. Access Mgmt. Group, supra, 345 Ga. App. at 134 (2) (c). Because our opinion reinstates the jury's verdict and damages for the breach of contract claim, however, we must vacate that portion of the Court of Appeals' opinion and remand the case to the Court of Appeals to address the issue of double recovery.

Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur, except Bethel, J., disqualified.

Decided March 4, 2019.

Certiorari to the Court of Appeals of Georgia — 345 Ga. App. 130.

Teague & Chambless, J. Stuart Teague, Jr., Keisha L. M. Chambless, for appellants.

Drew, Eckl & Farnham, Bruce A. Taylor, Jr., Jennifer E. Parrott, for appellee.